Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
Yana A. Hart, Esq. (SBN: 306499)
yana@westcoastlitigation.com
**HYDE & SWIGART, APC**
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Fax: (619) 297-1022

[Additional Attorneys on Signature Page]

*Attorneys for Plaintiff*,
Richard Dalton

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION

| | |
|---|---|
| Richard Dalton, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Anovos Productions, LLC; Disney Lucasfilm Ltd.; NBCUniversal Media, LLC; and CBS Studios, Inc.,<br><br>Defendants. | **Case No: 2:19-cv-04821**<br><br>**<u>Class Action</u>**<br><br>**Complaint for Damages and Injunctive Relief for:**<br><br>1. **Fraud;**<br>2. **Breach of Contract;**<br>3. **California Bus. & Prof. § 17200,** *et seq.***;**<br>4. **Unjust Enrichment**<br>5. **California Civ. Code § 1750,** *et seq.***;**<br>6. **Negligent Misrepresentation; and**<br>7. **Intentional Misrepresentation.**<br><br>**JURY TRIAL DEMANDED** |

### INTRODUCTION

1.   Richard Dalton ("Plaintiff"), through his attorneys, brings this class action complaint for damages, and injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Anovos Productions, LLC ("Anovos"); Disney Lucasfilm Ltd. ("Disney"); NBCUniversal Media, LLC ("NBCU"); and CBS Studios, Inc. ("CBS") (collectively "Defendants"), in connection with the marketing and sale of licensed products.

2.   More specifically, Plaintiff brings this complaint, by and through his attorneys, for damages arising out of Defendants' practice of charging consumers upfront costs for licensed products and shipping, despite the fact these products were never delivered and monies never refunded.

3.   Plaintiff alleges as follows upon personal knowledge as to his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

4.   Defendants collectively engaged in fraudulent practices in connection with their licensing and or marketing of products to consumers. At all times material to this complaint, Defendants Disney, NBCU, and CBS (collectively "Licensors") controlled the acts and practices of Anovos, including the acts and practices alleged in this complaint.

5.   Specifically, Licensors licensed the right to sell their products with their logos and despite having knowledge of Anovos' fraudulent scheme to abscond with consumers' money, Licensors continued to reap profits from their licensing agreements.

6.   Employing this strategy Defendants profited for years at the expense of Plaintiff and consumers alike.

7.   Unless otherwise indicated, the use of Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors,

1   assigns, principals, trustees, sureties, subrogees, representatives, and insurers

2   of Defendant.

3                        **JURISDICTION AND VENUE**

4   8.   Jurisdiction is proper under the Class Action Fairness Act of 2005 ("CAFA"),

5        28 U.S.C. § 1332(d)(2) because Plaintiff, a resident of the State of Louisiana,

6        seeks relief on behalf of a nationwide class, which will result in at least one

7        class member belonging to a different state than that of Defendants, Delaware

8        and California companies.

9   9.   Plaintiff also seeks refund of all monies paid and disgorgement of ill-gotten

10       monies in connection with the marketing and sale of Defendants' products,

11       which in Plaintiff's case alone exceeds $40,000. When aggregated among a

12       proposed class number in the tens of thousands, damages exceed the

13       $5,000,000 threshold for federal court jurisdiction.

14  10.  Therefore, both diversity jurisdiction and the damages threshold under CAFA

15       are present, and this Court has jurisdiction.

16  11.  Because NBCU and Disney are headquartered in California, and CBS  and

17       Anovos conduct business within the State of California, personal jurisdiction

18       is established.

19  12.  Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants are subject

20       to the Court's personal jurisdiction with respect to this action.

21                        **PARTIES & DEFINITIONS**

22  13.  Plaintiff is a natural person who resides in the State of Louisiana who

23       purchased multiple products from Defendant and has yet to receive them nor

24       a refund.

25  14.  Defendant NBCU is a Delaware Corporation with its headquarters located in

26       Universal City, California.

27  //

28  //

---

15. Defendant CBS is a Delaware Corporation, registered to conduct business in California. Defendant CBS regularly and continuously conducts business in Los Angeles, California.

16. Defendant Disney is a California limited liability company, located in San Francisco, California.

17. Defendant Anovos is a Delaware Corporation headquartered in McAllen, Texas, systematically and continuously conducting its business nationwide, including Los Angeles, California.

18. Upon information and belief, Defendant Anovos is an agent and authorized representative of Defendants, Licensors. Anovos is engaged in the promotion and sale of various products containing the Licensors' trademarks in the United States, including in this District, through its business, social media websites, and its own website at anovos.com.

19. Upon information and belief, Defendant Anovos was founded in 2009 and has been licensed by Licensors to provide movie and television accurate replicas of costumes for Internet Protocol networks such as Star Wars, Star Trek, and Battlestar Galactica. Anovos' Star Trek uniform replica license from CBS covers the design, prototyping, manufacturing and distribution of Star Trek the movie and television line. Anovos' Battlestar Galactica line, awarded by NBCU covers uniform replicas as well as prop replicas and accessories. And Anovos acquired the license for Star Wars costumes and props from Disney.

20. Upon information and belief, Anovos is the exclusive licensee for costumes and props for Licensors.

## FACTUAL ALLEGATIONS

21. Anovos has charged Plaintiff nearly $40,000 for Anovos Products licensed by Licensors. Anovos has required Plaintiff and consumers alike to pay upfront this total cost, which includes prices for shipping.

22.   In the instances described below, consumers who purchased Anovos products, after experiencing significant delays, have never received the products they already paid for nor have they received a refund for their payments.

**Anovos Products**

23.   Defendant Anovos operates anovos.com, which sells accurate unifoms and prop replicas from movies, television, and contemporary media, all of which are manufactured and marketed by Anovos.

24.   Many Anovos customers go through great lengths to acquire Anovos' products for Cosplay.

25.   Cosplay is short for the term costume play. Cosplay refers to someone dressing up as a superhero or a character from a video game, comic book, or movie. Cosplay's popularity surged in the '90s, when Japanese anime and manga gained popularity in the US. Cosplay's popularity has surged to the point where there is even a television show about it—Heroes of Cosplay.

26.   Cosplay is the next level of fandom.

27.   Cosplay is about expressing what individuals love as well as being about community. While anyone can cosplay, cosplayers often attend and display their costumes at world renowned conventions such as the San Diego Comic-Con.

28.   Indeed, cosplay is often seen as a type of performance art.

29.   Still, a majority of Anovos customers are not involved in Cosplay

30.   Instead, Anovos customers are made up of a variety of individuals.

31.   Be it the love of a character, interests in collecting, enjoying the attention of being in an elaborate costume or portraying a loved character, or the appreciation from completing a complex costume or model, there are many motivations for purchasing Anovos products.

32.   Accordingly, obtaining the the high-end costumes and replicas in a timely manner is paramount for consumers.

33. Anovos' website currently, and at all times relevant, marketed Star Wars, Star Trek, and Battlestar Galactica memorabilia for pre-sale orders. Its website describes products for sale, their prices, estimated delivery dates, and terms and conditions of sale. It touts the process for creating its replicas including gaining access to the original films and the uniqueness of the unaltered versions Anovos can provide.

34. For all pre-orders, Defendants have required consumers pay upfront the entire amount of an order stating, "Payment for the order is remitted at the time the order is placed, in addition to shipping and handling. . . ."

**Plaintiff Richard Dalton**

35. On or around March 22, 2016, Plaintiff made the first of many purchases on Anovos' website for a Star Trek Spock Replica Blue Tunic, Star Wars TIE Fighter Pilot Helmet, Star Trek Captain Kirk Replica Gold Tunic, and a Star Trek Starfleet Uniform Shirt for a total of $856.80 plus $54.27 shipping.

36. Upon submission of Plaintiff's order, Plaintiff paid and Anovos received the entire payment amount of $911.07.

37. To date, over three years later, Plaintiff has not received these items nor a refund for the $911.07 paid to Anovos.

38. Unsuspecting of Anovos' business practices, on or around April 16, 2016, Plaintiff made a second purchase inclusive of a Star Wars Imperil Shadow Trooper (Pre-order) kit with Completed Helmet and a Star Wars: The Force Awakens: Kylo Ren Costume Ensemble with Helmet (Pre-order) for a total of $3,420.00 plus $51.69 shipping.

39. Upon submission of Plaintiff's order, Plaintiff paid and Anovos received the entire payment amount of $3,471.69.

40. Similarly, to date, Plaintiff has not received these items nor a refund for the $3,471.69 paid to Anovos.

41.   Up to December 11, 2018, Plaintiff continuously made pre-order purchases on Anovos' website. Products ranged from $10.00 pennants to a $9,000 Star Trek Discovery NCC - 1701 U.S.S. Enterprise Constitution Starship (a buildable replica of the ship inspired by the iconic Federation Starship from the original Star Trek series.)

42.   With each purchase, Plaintiff was required to pay upfront 100% of the cost of the product.

43.   With nearly each purchase, Plaintiff was required to upfront the cost of shipping.

44.   As the estimated shipping dates for each product approached, Anovos would delay the shipping due date for a myriad of reasons including issues with the manufacturer.

45.   Plaintiff, however, remained optimistic that these delays were temporary and he would soon receive his prepaid products.

46.   Ultimately, on April 11, 2019 —over three years after Plaintiff's first Anovos purchase—Anovos announced, on its website, the cause of the shipping delays Plaintiff and consumers alike were experiencing:

> [W]hen a product had production issues and became delayed, we would push out the delivery date. This change cause some customers to cancel their orders, and in some ways, resulted in a buying habit of waiting until an item was in-stock prior to making a purchase. However, this "wait and see" behavior frequently backfired o the customer since the majority of our items are produced to meet a minimum order quantity, leaving little—if any—inventory available after pre-orders were fulfilled. As an unintended consequence, cancelations of pre-orders caused a gradual shrinkage of overall production budget. Fewer pre-orders let to a number of issues including an increase in raw goods pricing, increase in per unit cost, a deprioritizaiton of product and—in some extreme cases—the cancellation of items that no longer met the factory's minimums.[1]

47.   Between March 22, 2016 and December 11, 2018, Anovos accepted Plaintiff's payments.

---

[1]   https://www.anovos.com/blogs/news/the-refund-issue   (internal   parenthetical omitted).

48. However, Anovos has still not delivered its pre-ordered and pre-paid products to Plaintiff.

### Defendants Practices

49. Despite Anovos' inability to fulfill the hundreds, if not thousands of pre-paid orders customers have already submitted, Anovos continues to market and sell pre-order items on its website and on social media in the same manner: requiring full upfront costs of the items in addition to shipping.

50. In numerous instances, consumers reached out directly to CBS, NBCU, and Disney regarding their concerns about Anovos.

51. Indeed, as early as 2016, Anovos' conduct has been heavily scrutinized.

52. Due to the high volume of consumer complaints concerning Anovos' failure to deliver purchased items, on January 27, 2016, the Better Business Bureau (BBB) sent a certified letter to Anovos. Specifically the letter addressed complaints similar to Plaintiff's, denouncing the fact that consumers were not receiving their orders.

53. After receiving no response from Anovos, BBB sent a follow up certified letter to Anovos in Mach of 2016. However, Anovos has failed to respond, nor improve its practices.

54. Instead, Anovos has recently announced on April 11, 2019 its new "all sales are final" policy, whereby refunds for pre-ordered (non-delivered) products placed in the future can no longer be issued.

55. Despite this "new" announcement, regardless of Anovos' purported policy in place, Anovos has often failed to provide refunds to consumers, even though they have not provided consumers with promised products or consumers have not received products for years.

56. In numerous instances, consumers have tried to contact Defendants to cancel their orders and obtain refunds, but have either been unable to reach Defendants or are told to simply wait.

57. Upon information and belief, Anovos must pay a minimum guarantee to Licensors.

58. Typically, a licensee only pays royalty fees once a minimum guarantee has been paid off. Thus, however much Anovos paid Licensors on release of their licensed products, Anovos would only pay royalties once the products net sales exceed that amount paid.

59. Over the lifetime of the individual licensing agreements between Licensors and Anovos, Licensors have collected their minimum guarantees and are further incentivized to have Anovos continue sales in order for Licensors to collect earned royalty income therefrom.

60. Upon information and belief, Licensors are the owners of everything Anovos designs, creates, markets and sells for Licensors.

61. Throughout Anovos' advertisements whether on its own website or social media, Licensors' logos are prominently featured on each promotional material and product.

62. Should Anovos fail to meet agreed upon quality standards, Licensors can order Anovos to stop the production of said product.

63. Accordingly, Licensors have a duty to supervise Anovos' use of the Licensors' own marks.

64. Licensors knew or should have known of Anovos' scheme. Nevertheless, Licensors profited from the scheme by permitting Anovos to use their well-known names and trademarked logos to induce target consumers to become Anovos customers.

65. There is a causal nexus between the Licensors and Anovos. The Licensors awarded Anovos the Star Wars, Star Trek, and Battlestar Galactica replica and costume licenses thereby approving Anovos' decisions to advertise, market, design, and distribute such costume and replica memorabilia.

66. While the Licensors acknowledged the complaints against Anovos and Anovos' inability to adhere to the purchase agreements it made with consumers, the Licensors still renewed Anovos' licensing agreements and permitted Anovos to continue to defraud consumers.

67. Throughout the proposed class period, Anovos' conduct was on behalf of and with the authorization of each of the Licensors in a coordinated effort to earn profit on Star Wars, Star Trek, and Battlestar Galactica memorabilia.

68. The Licensors maintained profits from their licensing agreements with Anovos at the expense of consumers.

69. Consequently, Anovos' illegal actions were the responsibility of the Licensors both directly and vicariously. Therefore, Disney, CBS, and NBCU are each liable for Anovos' unlawful conduct discussed herein as it pertains to their licensed products.

70. Despite notice of errors, lack of oversight, deliberate ignorance of complaints Defendants continue their unlawful and fraudulent practices, subjecting consumers not only to substantial stress, frustration, and anxiety over Defendants, but also economic damages - Defendants' deposit of unearned payments.

71. In truth and in fact, consumers have not received their pre-ordered and pre-paid products. Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' conduct.

72. Defendants took advantage of Plaintiff and consumers alike through their joint oppressive and fraudulent conduct, including but not limited to inducing consumers into purchasing items it did not have the intentions nor ability to produce, then for years continuously requesting consumers pre-order items all the while stalling at production of the products.

73. Plaintiff, believing that Defendants were acting in good faith naively paid for unearned payments, until the day Plaintiff realized that the products promised by Defendants would never be delivered.

**CLASS ACTION ALLEGATIONS**

74. Plaintiff and the members of the Class have all suffered injury in fact as a result of the Defendants' unlawful and misleading conduct.

75. The "Class Period" means four years prior to filing of the Complaint in this action.

76. Plaintiff brings this lawsuit individually and on behalf of other consumers similarly situated.  Subject to additional information obtained through further investigation and/or discovery, the proposed "Class" consists of:

> All consumers who paid for a pre-order product(s) from Anovos and licensed by Disney, NBCU, and/or CBS, and who have not received the product nor a refund from January 1, 2016 through the present.

77. Excluded from the Class are Defendants and any of Defendants' officers, directors, and employees. Plaintiff reserves the right to modify or amend the Class definition before the Court determines whether certification is appropriate.

78. *Ascertainability.* The members of the Class are readily ascertainable from Defendants' records, as well as through public notice.

79. *Numerosity*. The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believe, and on that basis alleges, that the proposed class consists of thousands of members.

80. ***Existence and Predominance of Common Questions of Law and Fact***. Common questions of law and fact exist as to all members of the Class , and predominate over any questions affecting only individual Class members. All members of the Class have been subject to the same conduct and their claims

are based on the standardized marketing, advertisements, delays, and policies of Defendants. The common legal and factual questions include, but are not limited to, the following:

- Whether Defendants' shipping estimations are untrue, or are misleading, or likely to deceive reasonable consumers;

- Whether Defendants' conduct in requiring consumers pay full price for pre-order items and then not deliver them is misleading or unlawful within the meaning of California Business & Professions Code §§ 17200, *et seq.*

- Whether Defendants' conduct is a fraudulent act or practice within the meaning of California Business & Professions Code §§ 17200, *et seq*;

- Whether Defendants' conduct is an unfair act or practice within the meaning of California Business & Professions Code §§ 17200, *et seq*;

- Whether Defendants' advertising is unfair, deceptive, untrue or misleading within the meaning of California Business & Professions Code §§ 17200, *et seq*;

- Whether Defendants' advertising is false, untrue, or misleading within the meaning of California Business & Professions Code §§ 17500, *et seq.;*

- Whether Defendant, through its conduct, received money that, in equity and good conscience, belongs to Plaintiff and members of the Class;

- Whether Plaintiff and proposed members of the Class are entitled to equitable relief, including but not limited to restitution and/or disgorgement; and

- Whether Plaintiff and proposed members of the Class are entitled to injunctive relief sought herein.

81. ***Typicality***. Plaintiff's claims are typical of the claims of the members of the Class in that Plaintiff is a member of the Class that Plaintiff seeks to represent. Plaintiff, like members of the proposed Class, purchased pre-order

Anovos' products licensed by Licensors and never received these products. Plaintiff is advancing the same claims and legal theories individually and on behalf of all absent members of the Class. Defendants have no defenses unique to Plaintiff.

82. ***Adequacy of Representation***. Plaintiff will fairly and adequately protect the interests of the members of the Class.    Plaintiff has retained counsel experienced in consumer protection law, including class actions. Plaintiff has no adverse or antagonistic interest to those in the Class, and will fairly and adequately protect the interests of the Class. Plaintiff's attorneys are aware of no interests adverse or antagonistic to those of Plaintiff and proposed Class.

83. ***Superiority***. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individualized litigation would create the danger of inconsistent and/or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and court system and the issues raised by this action. The damages or other financial detriment suffered by individual Class members may be relatively small compared to the burden and expense that would be entailed by individual litigation of the claims against Defendant. The injury suffered by each individual member of the proposed class is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be impractical for members of the proposed Class to individually redress effectively the wrongs to them. Even if the members of the proposed Class could afford such litigation, the court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer

management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

84. Unless the Class is certified, Defendants will retain monies received as a result of Defendants' unlawful and deceptive conduct alleged herein. Unless a class-wide injunction is issued, Defendants will continue to take payments for pre-orders from consumers without delivering said orders, and members of the public will continue to be misled, while members of the Class will continue to be harmed, and denied their rights under California law.

85. Moreover, Defendants have acted or refused to act on grounds that are generally applicable to the class, so that declaratory and injunctive relief is appropriate to the Class as a whole, further making class certification appropriate.

### FIRST CAUSE OF ACTION

### FRAUD

86. Plaintiff repeats, re-alleges, and incorporates by reference, all of the above paragraphs of this Complaint as though fully stated herein.

87. From March 22, 2016, through and including December 11, 2018, Defendants fraudulently requested payments for products that Defendants never intended to deliver to Plaintiff.

88. Plaintiff was not obligated to pay full price for products Defendants could not and would not provide Plaintiff. Thus, the amounts demanded by Defendants' advertisements were false and inaccurate in attempt for Defendants to maximize unearned profits.

89. Further, since at least 2016, Licensors were aware of Anovos' fraudulent conduct, yet did nothing to prevent is continuance. Instead, Licensors reap the benefits of Anovos' conduct.

90. Since the inception of their licensing agreements, all Defendants, in attempt to maximize their profits, fraudulently began demanding and retaining Plaintiff

and class members' payments for products as well as shipping that were never and will never be shipped.

91. Defendants failed to disclose that Defendants were charging Plaintiff monies that were never earned i.e. fees that were not going towards products Plaintiff and the class would receive.

92. Plaintiff reasonably believed that Defendants would deliver the products purchased.

93. Plaintiff reasonably relied first on the truthfulness of Defendants' online advertisements and then on Defendants continuous notifications that  despite delays in shipping, products would still be delivered to consumers.

94. As a result of Defendants' fraudulent misrepresentations, concealment of the true nature of pre-orders, and refusals to refund monies to Plaintiff and consumers alike, Plaintiff and the class suffered great economic injury.

95. Thus, Plaintiff and the Class seek economic and non-economic damages, punitive damages, attorneys' fees, and litigation costs as a result of Defendants' oppressive and fraudulent conduct.

## SECOND CAUSE OF ACTION

### BREACH OF CONTRACT

### (PLAINTIFF V. ANOVOS)

96. Plaintiff repeats, re-alleges, and incorporates by reference, all of the above paragraphs of this Complaint as though fully stated herein.

97. On or about March 22, 2016 Plaintiff ordered a Star Treck: The Movie - Spock Replica Blue Tunic; a Star Wars: The Force Awakens: First Order TIE Fighter Pilot Helmet Premier Line Accessory; Star Trek: The Movie - Captain Kirk Replica Gold Tunic; Star Trek: Into Darkness - Starfleet Uniform Shirt from Anovos' website. (Order # 20352).

98. Plaintiff paid Anovos $911.07 for the products and shipping.

99. Despite Plaintiff's payment, Plaintiff has yet to receive these products from Anovos.

100. Following, Plaintiff made 47 additional purchases. (Order #s 21055; 21094; 24447; 24453; 35626; 39430; 43050; 43169; 43276; 43603; 44364; 44567; 44568; 46382; 46510; 47111; 47285; 47494; 48004; 48720; 48855; 50388; 50389; 50390; 50434; 50435; 50489; 50725; 50831; 52545; 52706; 52707; 52741; 52935; 53360; 53530; 54865; 54866; 55017; 55368; 55584; 57346; 57453; 57760; 57832; 57869; and 60966.)

101. Just as with the March 22, 2016 purchase, Anovos failed to fulfill these orders.

102. As a direct and proximate result of Defendant Anovos' aforesaid conduct, Plaintiff and the Class suffered direct financial harm.

103. As a direct and proximate result of Defendant, Anovos' aforesaid conduct, Plaintiff and the Class suffered and will continue to suffer economic damages and the loss of use of the products they were promised.

104. Therefore, Plaintiff and the class are entitled to recover damages, and seek a injunctive relief to prevent such conduct in the future.

### THIRD CAUSE OF ACTION

### UNJUST ENRICHMENT

105. Plaintiff repeats, re-alleges, and incorporates by reference, all of the above paragraphs of this Complaint as though fully stated herein.

106. At all times relevant hereto, Defendants unlawfully and unjustly absconded with Plaintiff and the Class' funds.

107. Defendants had and followed a policy and practice of taking the full price of pre-ordered products from consumers then failing to deliver those products.

108. Defendants thereafter unlawfully retained Plaintiff and the Class' funds.

//

//

109. Defendants should not be permitted to unjustly enrich themselves at the expense of Plaintiff and the Class, and should be required to make restitution of the received unlawful funds.

110. As a direct and proximate result of Defendants' aforesaid conduct, Plaintiff and the Class suffered and will continue to suffer economic damages as well as the loss of use of items promised to them.

111. Therefore, Plaintiff and the Class are entitled to recover damages, and seek injunctive relief to prevent such conduct in the future.

### FOURTH CAUSE OF ACTION

### UNFAIR COMPETITIONS LAW UNDER CAL. BUS. & PROF. CODE § 17200

112. Plaintiff repeats, re-alleges, and incorporates by reference, all of the above paragraphs of this Complaint as though fully stated herein.

113. "Unfair competition" is defined by Business Professions Code Section § 17200 as encompassing several types of business "wrongs," including: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising."   The definitions in § 17200 are drafted in the disjunctive, meaning that each of theses "wrongs" operates independently from the others.

114. By and through Defendants' joint and several unlawful conduct alleged in further detail above and herein, Defendants engaged in conduct which constitutes unlawful, unfair, and/or fraudulent business practices, specifically Defendants' unlawful taking of unearned monies, and Defendants' unlawful refusal to issue refunds to consumers.

### A. "Unlawful" Prong

115. Defendants have violated California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(9) and (10) and committed negligent and/or intentional misrepresentation, therefore, Defendants have violated California's Unfair

Competition Law ("UCL"), Business & Professions Code §17200, *et seq.*, which provides a cause of action for an "unlawful" business act or practice carried out on members of the California public.

116. Defendant had other reasonably available alternatives to further its business interests, other than the unlawful conduct described herein.

117. Instead Defendants deliberately requested and accepted Plaintiff and the Class' full payments without the intent to deliver and provide the paid for products.

118. Further, Defendants' conduct constitutes unlawful business practices because charging unearned amounts is an unlawful activity, in essence - theft of Plaintiff and the Class' funds.

119. Plaintiff reserves the right to allege other violations of law, which constitute additional unlawful business practices or acts, as such conduct is ongoing and continues to this date.

### B. "Unfair" Prong

120. Defendants actions and representations constitute an "unfair" business act or practice under Business & Professions Code § 17200, *et seq.* in that Defendants' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. Without limitation, it is an unfair business act or practice for Defendants to knowingly or negligently represent to the consuming public that it offers Star Wars, Star Trek, and Battlestar Galactica products, then secure payment, only to not provide such products, nor return payment to the customers.

121. Such conduct by Defendants is "unfair" because it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers in that consumers are led to believe that Defendants will actually provide the products they offer.

122. Plaintiff could not have reasonably avoided the injury he suffered. Indeed, for years, Anovos announced it would fulfill Plaintiff's pre-order shipments.

123. Plaintiff reserves the right to allege further conduct that constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date, as Defendants continue to mislead the public.

### C. "Fraudulent" Prong

124. Defendants' claims and statements were false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200, *et seq*. Whether through conduct, in writing or orally, Defendants engaged in fraudulent acts and business practices by knowingly or negligently representing to the public, that Defendants' would be produced by certain dates, year after year.

125. Plaintiff reserves the right to allege further conduct that constitutes other fraudulent business acts or practices.  Such conduct is ongoing and continues to this date.

126. Defendants' fraudulent, unlawful and unfair business practices, as described above, present an ongoing threat to consumers because consumers will continue to be misled by the products and services Defendants offer on its website and through social media.

127. Plaintiff has suffered injury in fact and has lost money as a result of Defendants' unfair competition, as more fully set forth herein. Plaintiff has been injured as he relied on Defendants' misrepresentations.

128. Defendant, through its acts of unfair competition, has unfairly acquired several thousands of dollars from Plaintiff and consumers alike. Plaintiff requests that this Court restore these monies for Defendants' violations of the California Business & Professions Code§ 17200, *et seq.*, as discussed herein.

129. Plaintiff further seeks an order requiring Defendants to make full restitution of all monies wrongfully obtained and disgorge all ill-gotten revenues and/or profits, together with interest thereupon.

### FIFTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT

### Cal. Civ. Code Section 1750, *et seq.*

130. Plaintiff repeats, re-alleges and incorporates herein by reference the above allegations as if fully stated herein.

131. California Civil Code section 1750, *et seq.*, titled the Consumers Legal Remedies Act ("CLRA"), provides a list of "unfair or deceptive" practices in a "transaction" relating to the sale of "goods" or "services" to a "consumer." The Legislature's intent in promulgating the CLRA is expressed in Civil Code section 1760, which provides, *inter alia*, that its terms are to be:

> "Construed liberally and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."

132. Defendant, Plaintiff, and the Class members are each "person[s]" as defined pursuant to Civil Code section 1761(c).

133. Defendants' products constitute "goods" as defined pursuant to Civil Code Section 1761(a).

134. Plaintiff, and the Class members, are each "consumer[s]" as defined pursuant to Civil Code section 1761(d).

135. Plaintiff and the Class member's attempted procurement of Defendants' products constituted a "Transaction" as defined by Civil Code section 1761(e).

136. Civil Code section 1770(a)(9) states that:

(a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

(9) Advertising goods or services with intent not to sell them as advertised.

137.   Civil Code section 1770(a)(10) states that:

(a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

(10) Advertising goods or services with intent not to supply reasonably expectable demand, unless the advertisement discloses a limitation of quantity.

138.   Defendant violated Civil Code section 1770(a)(9) and (10) by representing, online, that certain goods would be delivered at a certain time.

139.   Defendant never intended to deliver such goods, further evidenced by the fact that to date Defendants have not delivered goods ordered over three years ago, in violation of Civil Code section 1770(a)(9) and (10).

140.   Through their purchase confirmations provided to consumers, Defendants guaranteed the production of shipment of goods. All the while Defendants continuously stalled at producing said goods.

141.   On information and belief, Defendants' violations of the CLRA set forth herein were done with awareness of the fact that the conduct alleged was wrongful and was motivated solely for Defendants' self-interest, monetary gain, and increased profit.

142.   On information and belief, Defendant committed these acts knowing the harm that would result to Plaintiff and the Class, and Defendant engaged in such unfair and deceptive conduct notwithstanding such knowledge. In fact, Defendants continue to engage in such conduct despite the complaints brought to their attention.

143. Plaintiff suffered an "injury in fact" because Plaintiff's money was taken by Defendants as a result of Defendants' false representations set forth on Defendants' advertisements.

144. As a direct and proximate result of Defendants' violations of the CLRA, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct in the future.

145. Plaintiff served a certified letter pursuant to the CLRA, California Civil Code section 1782 on Defendant with respect to its business.

146. As of the date of the filing of this Complaint, Defendants have not complied with Plaintiff's demands outlined in the letter to Defendant.

### SIXTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

147. Plaintiff repeats, re-alleges and incorporates herein by reference the above allegations as if fully stated herein.

148. Defendants represented to the public, including Plaintiff, that their products would be delivered. However, as delivery dates for pre-order products approached, Defendants would continuously delay and extend shipment dates, and never delivering the paid for products.

149. Defendants made the representations herein alleged, negligently, and should have known these representations were untrue, and Defendants lacked a reasonable basis for believing the representations to be true at the time such representations were made to Plaintiff, and others similarly situated.

150. By making these representations, Defendants intended to induce Plaintiff and others to pay thousands of dollars for products that would never be delivered to them.

151. Through its website, press conferences, and social media posts, Plaintiff saw, believed, and reasonably relied upon Defendants' representations and, in such

reliance, continued to purchase products for Anovos and patiently wait for the shipments.

152. Plaintiff was harmed in that Plaintiff actually had to pay thousands of dollars, for items he never received.

153. Plaintiff's reliance on Defendants' representation of products to be delivered and estimated shipment dates was a substantial factor in causing Plaintiff's harm.

## SEVENTH CAUSE OF ACTION

### INTENTIONAL MISREPRESENTATION

154. Plaintiff repeats, re-alleges and incorporates herein by reference the above allegations as if fully stated herein.

155. Defendants represented to the public, including Plaintiff, that their products would be delivered to consumers. However, when shipment dates approached, Defendant Anovos continuously extended the shipment dates, yet refused to provide refunds in numerous instances.

156. Defendants intentionally made the representations regarding the delivery of its products, all the while, Defendants knew that these representations were false; or Defendants made the representations recklessly and without regard for their truth.

157. By making these representations, Defendants intended that Plaintiff and other consumers would rely on those statements in deciding whether or not to buy Defendants' products.

158. Plaintiff was harmed in that Plaintiff actually had to pay thousands of dollars, and continues to be without the use and enjoyment of the products promised.

159. Plaintiff's reliance on Defendants' representation of the products being delivered and estimated shipment dates was a substantial factor in causing Plaintiff's harm.

160. By engaging in the acts described above, Defendants are guilty of malice, oppression, and fraud, and Plaintiff and the Class are therefore entitled to recover exemplary or punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and the putative Class members the following relief against Defendants:

• This Action be certified as a class action;

• Plaintiff be appointed as the Class Representative;

• Plaintiff's attorneys be appointed as Class counsel;

Plaintiff further prays for judgment against Defendants as follows:

### First Cause of Action

### Fraud

• An award of compensatory, special, general, and punitive damages according to proof against all Defendants;

• An award of reasonable attorney's fees and costs;

• An award of pre- and post-judgment interest; and

• Any other relief the Court may deem just and proper.

### Second Cause of Action

### Breach of Contract

### (Plaintiff v. Anovos)

• An award of compensatory, special, and general damages according to proof against Anovos;

• An award of reasonable attorney's fees and costs;

• An award of pre- and post-judgment interest;

• Any other relief the Court may deem just and proper.

### Third Cause of Action

### Unjust Enrichment

- An award of compensatory, special, and general damages according to proof against all Defendants;
- An award of reasonable attorneys' fees and costs;
- An award of pre- and post-judgment interest;
- Any other relief the Court may deem just and proper.

### Fourth Cause of Action

### Unfair Competitions Law Under Cal. Bus. & Prof. Code § 17200

- An award of compensatory, special, general, and punitive damages according to proof against all Defendants;
- An award of reasonable attorney's fees and costs;
- An award of pre- and post-judgment interest; and
- Any other relief the Court may deem just and proper.

### Fifth Cause of Action

### California Consumers Legal Remedies Act

### Cal. Civ. Code Section 1750, *et seq.*

- Injunctive relief pursuant to Cal. Civ. Code § 1780(a);
- An award of costs and attorney's fees pursuant to Cal. Civ. Code § 1780(e); and
- Any and all relief that this Court deems necessary or appropriate.

### Sixth Cause of Action

### Negligent Misrepresentation

- Actual damages, injunctive relief, restitution, and punitive damages.

### Seventh Cause of Action

### Intentional Misrepresentation

- Actual damages, injunctive relief, restitution, and punitive damages.

//

//

//

## JURY DEMAND

154.   Pursuant to the Seventh Amendment to the Constitution of the United States of America,  Plaintiff is entitled to, and demands, a trial by jury.


Date: June 3, 2019                                   **HYDE & SWIGART, APC**


By: *s/ Joshua B. Swigart*
Joshua B. Swigart, Esq.
*Attorneys for Plaintiff*


**Additional Attorneys**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Fax: (800) 520-5523

Kevin R. Duck, Esq. (SBN: 23043)
**DUCK LAW FIRM, L.L.C.**
5040 Ambassador Caffery Parkway, Suite 200
Lafayette, LA 70508
Telephone: (337) 406-1144
Fax: (337) 406-1050