**KAZEROUNI LAW GROUP, APC**
Yana A. Hart, Esq. (SBN: 306499)
yana@kazlg.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Fax: (619) 297-1022

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Fax: (800) 520-5523
[Additional Attorneys on Signature Page]

*Attorneys for Plaintiffs,*
*Arthur Catalano, Matthew Fernandes,*
*Andre Joseph, Alexander Alonso, and Randolph Jones*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Arthur Catalano, Matthew Fernandes, Andre Joseph, Alexander Alonso, and Randolph Jones, individually and on behalf of others similarly situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**Anovos Productions, LLC, and Disney Lucasfilm Ltd.,**<br><br>**Defendants.** | **Case No: 2:19-cv-04821-MWF-KS**<br>**Class Action**<br><br>**Third Amended Complaint for Damages and Injunctive Relief for:**<br>1. **Fraud;**<br>2. **Breach of Contract;**<br>3. **California Bus. & Prof. § 17200,** *et seq.*;<br>4. **Fla. Stat. § 501.201,** *et seq.*;<br>5. **N.Y. Gen. Bus. Law § 349,** *et seq.*;<br>6. **Wash. Rev. Code § 19.86.010,** *et seq.*;<br>7. **California Civ. Code § 1750,** *et seq.*;<br>8. **Negligent Misrepresentation; and**<br>9. **Intentional Misrepresentation.**<br><br>**JURY TRIAL DEMANDED** |

**Introduction**

1. Arthur Catalano ("Mr. Catalano"), Matthew Fernandes ("Mr. Fernandes"), Andre Joseph ("Mr. Joseph"), Alexander Alonso ("Mr. Alonso"), and Randolph Jones ("Mr. Jones") (collectively referred to as "Plaintiffs"), through their attorneys, bring this class action complaint for damages, and injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Anovos Productions, LLC ("Anovos") and Disney Lucasfilm Ltd. ("Disney") (collectively "Defendants"), in connection with the marketing and sale of licensed products.

2. More specifically, Plaintiffs bring this complaint, by and through their attorneys, for damages arising out of Defendants' practice of charging consumers upfront costs for licensed products and shipping, despite the fact these products were never delivered and monies never refunded.

3. Plaintiffs allege as follows upon personal knowledge as to their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiffs' attorneys.

4. Defendants collectively engaged in fraudulent practices in connection with their licensing and or marketing of products to consumers. At all times material to this complaint, Defendant Disney controlled the acts and practices of Anovos, including the acts and practices alleged in this complaint.

5. Specifically, Disney, CBS Studios, Inc. (collectively "Licensors") licensed and promoted Anovos' right to sell their products with their logos.

6. Upon information and belief Anovos has been licensed by Licensors to provide movie and television accurate replicas of costumes for Internet Protocol networks such as Star Wars and Star Trek. Anovos' Star Trek uniform replica license from CBS Studios, Inc. covers the design, prototyping, manufacturing and distribution of Star Trek the movie and

1    television line. Anovos' Star Wars line, awarded by Disney covers uniform
2    replicas as well as prop replicas and accessories.

3    7.    Despite having knowledge of Anovos' fraudulent scheme to abscond with
4          consumers' money, Disney and Anovos continued to reap profits from their
5          licensing agreement.

6    8.    Ignoring consumers' complaints and concerns, Disney employed this strategy,
7          whereby Defendants profited for years at the expense of Plaintiffs and
8          consumers alike.

9    9.    Unless otherwise indicated, the use of Defendants' names in this Complaint
10         includes all agents, employees, officers, members, directors, heirs, successors,
11         assigns, principals, trustees, sureties, subrogees, representatives, and insurers
12         of Defendants.

13                              **Jurisdiction & Venue**

14   10.   Jurisdiction is proper under the Class Action Fairness Act of 2005 ("CAFA"),
15         28 U.S.C. § 1332(d)(2) because Plaintiffs Mr. Catalano and Mr. Fernandes
16         (residents of the State of California); Mr. Joseph (resident of the State of New
17         York); Mr. Alonso (resident of the State of Florida); and Mr. Jones (resident of
18         the State of Washington), seek relief on behalf of statewide classes, which
19         will result in at least one class member belonging to a different state than that
20         of Defendants, Delaware and California companies.

21   11.   Plaintiffs also seek refund of all monies paid and disgorgement of ill-gotten
22         monies in connection with the marketing and sale of Defendants' products.
23         When aggregated among a proposed class number in the tens of thousands,
24         damages exceed the $5,000,000 threshold for federal court jurisdiction.

25   12.   Therefore, both diversity jurisdiction and the damages threshold under CAFA
26         are present, and this Court has jurisdiction.

27   13.   Because Disney is headquartered in California, and Anovos conducts business
28         within the State of California, personal jurisdiction is established.

14. Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants are subject to the Court's personal jurisdiction with respect to this action. Additionally, many of the acts and transactions giving rise to the violations of law complained of herein occurred in this district.

### Parties & Definitions

15. Plaintiff Mr. Catalano is a natural person who resides in the City of Hollywood, State of California, who purchased Anovos' undelivered and non-refunded products.

16. Plaintiff Mr. Fernandes is a natural person who resides in the City of Stockton, State of California who similarly purchased Defendants' products and has yet to receive them nor a refund.

17. Plaintiff Mr. Joseph is a natural person who resides in the State of New York who purchased multiple products from Defendants that he has yet to receive, nor a refund.

18. Plaintiff Mr. Alonso is a natural person who resides in the State of Florida who purchased a product from Defendants that he has yet to receive, nor a refund.

19. Plaintiff Mr. Jones is a natural person who resides in the State of Washington who purchased a product from Anovos that he has yet to receive, nor a refund.

20. Defendant Disney is a California limited liability company, located in San Francisco, California.

21. Defendant Anovos is a Delaware Corporation headquartered in McAllen, Texas, systematically and continuously conducting its business nationwide, including Los Angeles, California. Additionally, Anovos' primary registered California office is located in Simi Valley.

22. Upon information and belief, Defendant Anovos is an agent and authorized representative of Disney. Anovos is engaged in the promotion and sale of various products containing Disney's trademarks in the United States,

including in this District, through its social media websites, its website at anovos.com, and Disney's Star Wars website at starwars.com. Thus through its own website, Disney promotes the sales of Anovos' products, affirms the quality of products, and supports and endorses its licensee's sales.

23. Upon information and belief, Defendant Anovos was founded in 2009 and has been licensed by Disney to provide movie and television accurate replicas of costumes for Internet Protocol networks such as Star Wars.

24. Anovos represents that "[i]n partnership with Lucasfilm Ltd., Anovos use[s] original film assets and digital scan technology to reproduce [ ] officially licensed costume replica[s]."

25. Upon information and belief, Anovos is the exclusive licensee for costumes and props for Disney.

**Factual Allegations**

26. Anovos has charged Plaintiffs thousands of dollars for Anovos Products licensed by Disney. Anovos has required Plaintiffs and consumers alike to pay upfront these total costs, which include prices for shipping.

27. In the instances described below, consumers who purchased Anovos products, after experiencing significant delays, have never received certain products they already paid for nor have they received a refund for their payments.

Anovos Products

28. Defendant Anovos operates anovos.com, which sells accurate uniforms and prop replicas from movies, television, and contemporary media, all of which are manufactured and marketed by Anovos.

29. Many Anovos customers go through great lengths to acquire Anovos' products for Cosplay.

30. "Cosplay" is short for the term costume play. Cosplay refers to someone dressing up as a superhero or a character from a video game, comic book, or movie. Cosplay's popularity surged in the '90s, when Japanese anime and

1  manga gained popularity in the United States. Cosplay's popularity has surged
2  to the point where there is even a television show about it—Heroes of
3  Cosplay.

31.  Cosplay is the next level of fandom.

32.  Cosplay is about expressing what individuals love as well as being about
community. While anyone can cosplay, cosplayers often attend and display
their costumes at world renowned conventions such as the San Diego Comic-
Con.

33.  Indeed, cosplay is often seen as a type of performance art.

34.  Still, a majority of Anovos customers are not involved in Cosplay.

35.  Instead, Anovos customers are made up of a variety of individuals.

36.  Be it the love of a character, interests in collecting, enjoying the attention of
being in an elaborate costume, portraying a loved character, or the
appreciation from completing a complex costume or model, there are many
motivations for purchasing Anovos products.

37.  Accordingly, obtaining the the high-end costumes and replicas in a timely
manner is paramount for consumers.

38.  Anovos' website currently, and at all times relevant, marketed Star Wars
memorabilia for pre-sale orders. Its website describes products for sale, their
prices, estimated delivery dates, and terms and conditions of sale. It touts the
process for creating its replicas including gaining access to the original films
and the uniqueness of the unaltered versions Anovos can provide.

39.  Additionally, Anovos identifies many of its products as "limited in
production;" often collectors are enticed by the limited availability of
collectible items because they appreciate in value.

40.  Anovos aggressively advertises its products online through its social media
pages, its website, and even routinely exhibits at San Diego's Comic-Con
International.

41.  Regardless of where advertised, for all pre-orders, Defendants have required consumers pay upfront the entire amount of an order stating, "Payment for the order is remitted at the time the order is placed, in addition to shipping and handling. . . ."

42.  Prior to and during these transactions of selling the pre-ordered items, Defendants misrepresented to consumers: (a) that they are in the process of making the items; (b) the anticipated delivery dates of the items; and (c) that the items would, in fact, be delivered.

43.  For instance, a typical Anovos consumer would be prompted through the following procedures when making a pre-order purchase:

   a.  Once a customer picked an item it wished to purchase as a "pre-order," he or she would be doing so through an online page (on anovos.com) that provided a detailed description of each item. On the left side of the page, it provides a photograph of the item, and to the right of the photograph, one could change the size/division (if applicable) for the item. Below the photograph and the size selection, in bold lettering, the next sentence generally reads "ANOVOS is proud to offer [ITEM]. Shipping Estimates to begin by . . . .]. This was a typical representation for most transactions to each Plaintiff and consumers alike. For some items, however, the representation as to delivery dates was located lower in the item description section as fully described below.

   b.  Further, on the same page, but following the items' description, size charts and other product information, Anovos also provided a more detailed list of estimated dates of delivery. This estimate was available to all Plaintiffs, and all consumers purchasing the items. The delivery estimate read in bold: "**Delivery Estimate** [delivery estimate provided]." Each estimate was always a range of three months, which meant that those who purchased the item first, would be receiving deliveries in the first

1     estimated months, then the next group in the following months, and those

2     who purchased item more recently, would be receiving the item sometime

3     in the last estimated month. The following sentence read "Customers with

4     outstanding orders will be notified via email within 30 days of such

5     changes. . . .." In this section, Anovos also provided a link with more

6     detailed shipping information, which was similarly available on the pre-

7     orders items pages prior to purchasing the items.

8    c.    After following the link for more detailed information on shipping dates

9     located on "Updates page" consumers (including Plaintiffs) would see

10    more detailed information.

11  44.  As with each pre-order purchase, Anovos, through its website, would

12    represent to consumers that an item was scheduled to be shipped the same

13    year of the purchase order. For instance, in 2016, Anovos falsely represented

14    that the Star Wars: The Force Awakens: Kylo Ren Costume Ensemble with

15    Helmet (Pre-order) would be scheduled for delivery to consumers that same

16    year. Specifically, on Anovos' website, directly below the photos and within

17    the product's description, that the "[s]hipping estimated to begin by

18    November 2016:"

19

20    A dark warrior strong with the Force, Kylo Ren™ commands First Order missions with a temper as fiery as his unconventional lightsaber. ANOVOS is proud to offer the ***STAR WARS™: THE FORCE AWAKENS Kylo Ren Costume***

21    ***Ensemble with Premier Line Helmet Accessory***. Shipping estimated to begin by November 2016. Customers who purchase this item will be added to our monthly *Star Wars* newsletter for updates. Pre-order items are subject to change in

22    availability and features. To purchase this ensemble without Premier Line Helmet Accessory, please click here.

23

24  45.  On the same description page, Anovos also provided a link to the "Updates

25    page." On the Updates page, Anovos similarly falsely represented estimated

26    delivery dates:

27

28

**\*Kylo Ren™ Ensemble (with and without helmet):** Initial prototype under review. *Current estimated delivery: Q4 2016*

**\*Kylo Ren Premier Helmet Accessory:** Pre-order window closed. Initial prototype undergoing remastering for size and testing for unique paint application. *Current estimated delivery: Q2 2016*

**\*Luke Skywalker™ Bespin Ensemble:** Production complete. Awaiting final packaging and product safety testing for clearance. *Current estimated delivery adjusted: Q2 2016*

**\*Original Trilogy Snowtrooper Ensemble:** Coat material in approval process, pant material approved. Soft goods to be produced domestically. New molds complete and prepping for production. Investigating lining material options for armor interiors. Plans for helmet environmental system on hold. If you ordered the completed ensemble, please contact us for more information. *Current estimated delivery: Q2 2016*

**\*Original Trilogy Snowtrooper Helmet Accessory:** Prototypes for hard parts undergoing revisions. *Current estimated delivery: Q2 2016*

46. The Kylo Ren Ensemble has been in the same delivery stages for the past three years (since 2016), and many consumers who purchased this item years ago, have still not received the product.

47. In fact, on its website (www.anovos.com), Anovos seeks to advertise and sell this item, which it could not deliver since 2016, representing the quality of this yet to be made item as being "Authentic and Amazing:"



STAR WARS™: THE FORCE AWAKENS: Kylo Ren Premier Costume Ensemble with Helmet (Pre-Order)



$ 3,999.00

ADD ME TO THE INTEREST LIST!

Share this:  Tweet   Like 159

April 7, 2016: StarWars.com "5 Reasons ANOVOS' Kylo Ren Ensemble is Authentic and Amazing"

48.  Below the description of the item, size specifications, Anovos predicts this item to be delivered now sometime in 2019:[1]

**Order Information**

- **Delivery Estimate (TBD 2019):** All items are subject to change in availability, features, and delivery dates at any time and for any reason. Customers with outstanding orders will be notified via email within 30 days of such changes. Once this item is In-stock, it takes 10-14 business days for processing prior to shipment. Shipping times will vary by carrier and distance to the receiver. At the time of shipment, customers will receive an email notification that includes their order tracking number. A link to the most recent brand update can be found here.

- **Shipping and Handling**
  Payment for the pre-order is remitted at the time the pre-order is placed, in addition to shipping and handling for this item. Shipping and handling does NOT include customs fees, brokerage, or any taxes; those are charged separately for international locales by the appropriate agency.

49.  Once clicking on the highlighted word "here" within the Order Information (Delivery Estimate), consumers are presented with yet another page (formerly known as delivery Updates page), that similarly continues to misrepresent promising estimated dates of delivery sometime in 2019:[2]

**STAR WARS™: THE FORCE AWAKENS: Kylo Ren Helmet Premier Line Accessory (Q3 2019)**

The Kylo Ren helmet is coming much sooner than anticipated and we should be able to fulfill all outstanding orders in Q3 2019.



**STAR WARS™: THE FORCE AWAKENS: Kylo Ren Premier Costume Ensemble with Helmet (TBD 2019)**

A detailed blog post about both the Premier and Standard Kylo Ren Ensemble is nearly completed and just going through final approvals. Please check our blog posting here in the next couple weeks.

**STAR WARS™: THE FORCE AWAKENS: Kylo Ren Standard Line Costume Ensemble (TBD 2019)**

A detailed blog post about both the Premier and Standard Kylo Ren Ensemble is nearly completed and just going through final approvals. Please check our blog posting here in the next couple weeks.

**STAR WARS™: THE LAST JEDI First Order Stormtrooper Helmet Accessory (Q3 2019)**

The Last Jedi First Order helmet has been moved up because of the production shift we talked about earlier this year. It is now expected to deliver Q3 2019 instead of its early Q1 2020 release date. This is a direct result of the efficient steps taken by our production team.

---

[1] https://www.anovos.com/collections/star-wars/products/star-wars-the-force-awakens-kylo-ren-costume-ensemble-with-helmet-pre-order

[2] https://www.anovos.com/blogs/news/star-wars-2019-q2-update

50. The delivery Updates page provides a link to a blog that continues to entice customers with hope and false promises that the items (Kylo Costume and Accessories) are "worth the wait" (which has been recently added as of June 20, 2019, after this lawsuit was filed).[3]

51. Each time consumers including all named Plaintiffs here made purchases online, Anovos, at the time of purchase, falsely misrepresented estimated shipping dates to be within the same year of purchase as it continues to do now - years later.

52. Regrettably, Plaintiffs and other consumers trusted Anovos' false representations when making each of their purchases.

53. After Plaintiffs and other consumers purchased and paid for their products, their delivery dates have been postponed time after time. Each time a delivery date approached, Anovos continued to postpone the date, promising the devoted customers that the items would be arriving the following quarter/period. These updates as to the delivery dates were made by sending an email to expected customers waiting for their fully paid, pre-ordered items, updating Anovos website and blog-related pages.

54. Each new delivery update would postpone the delivery to the following quarter or season.

55. Most customers received a virtually identical automatic email updates regarding the postponement of their items because Anovos had a policy of notifying customers via email within 30 days of the changes to the delivery dates.[4]

56. For instance, a typical Anovos email update would state the following:

_____

[3] https://www.anovos.com/blogs/news (Kylo Ensemble — Worth the Wait!)

[4] Although often times Anovos email update would be sent after the delivery date has gone by.

This is Reggie from ANOVOS with new information about your order [#] for the [product name]. It has been brought to my attention that some clarification may be in order for my last update.

The production of these items has been completed this season. We are awaiting notification from our manufacturer as to when these ensembles will be loaded upon a ship to be delivered to us, a journey that may take several weeks. As it is unlikely that these items will arrive to our Fulfillment Center prior to the end of the [current] season due to this transit time, this ensemble is currently on track to ship [following season]. Once I have a firm date that shipping to customers will begin, I will notify you in a separate update.

I hope that this clears up any confusion caused by my previous update. I will continue to monitor the progress of this production run and update you if any new details arise in regards to your order.

Sincerely,

Reggie Scott

Customer Supply Liaison

57. However, for customers who did not receive the delivery change updates, and reached out to Anovos regarding the information on their pre-ordered items, they similarly received false responses estimating upcoming delivery dates, with a similar scripted email.

58. As the estimated shipping dates for each product approached, Anovos would delay the shipping due date for a myriad of reasons including issues with the manufacturer. However, Defendants' representations that the items would be delivered and would arrive on certain dates were false, as at no point did Defendants intend to make or deliver the pre-ordered items.

59. In fact, the pre-order of the various items was nothing but a scam to entice customers, procure customers' money, and abscond with customers' money.

60. Upon information and belief, at no point did Defendants actually intend to fulfill the pre-ordered items, and hundreds if not thousands of consumers, to date are left without moneys nor the ordered items.

61. Defendants, praying upon the excitement of consumers, most of whom are avid collectors of various Star Wars and Star Trek memorabilia, for years had taken thousands of dollars from consumers, without having the intention, whatsoever, of fulfilling the orders.

62. In fact, sometime prior 2016, Anovos began selling various expensive items in a "pre-order" fashion. By 2016, Anovos failed to deliver numerous products licensed by Licensors, including Disney.

63. Indeed, unbeknownst to Plaintiffs herein, due to the high volume of consumer complaints concerning Anovos' failure to deliver purchased items, on January 27, 2016, the Better Business Bureau (BBB) sent a certified letter to Anovos. Specifically the letter addressed complaints similar to Plaintiffs', denouncing the fact that consumers were not receiving their orders.

64. Despite Anovos, and Defendants' knowledge that the orders are not being fulfilled despite the representations made to the consumers and despite taking moneys from consumers, Anovos, working jointly with Disney, continued and continues to entice consumers to make purchases on its website, take consumers' moneys, and represent to consumers that the orders would be fulfilled.

65. After receiving no response from Anovos, BBB sent a follow up certified letter to Anovos in March of 2016. However, Anovos failed to respond, or improve its practices.

66. It was not until June 18, 2019, when  Anovos finally contacted BBB and stated that it is working diligently to ship products that have been ordered.

67. However, numerous consumers are still waiting on their products they purchased in 2016, and to date cannot get refunds.

68. Plaintiffs, as well as other consumers, reasonably relied on Defendants' joint representations that cherished memorabilia would be timely delivered and that

1  the orders would be fulfilled, only to learn years later that Defendants
2  absconded with their moneys, and nothing would be delivered.

3  <u>Plaintiff Arthur Catalano</u>

4  69.  Mr. Catalano was intrigued by Anovos' purported quality replicas.

5  70.  On September 4, 2016, Mr. Catalano made the first of two purchases from
6  Anovos' website. Both orders were listed and scheduled to arrive sometime in
7  2016.

8  71.  His first order consisted of a single "Star Trek: Beyond - Starfleet Survival
9  Suit Jacket."

10  72.  At the time of the purchase, Mr. Catalano paid in full $580.54 inclusive of
11  shipping and taxes.

12  73.  At the time of the order, Anovos misrepresented to Mr. Catalano on its
13  website that the first order would arrive in the first quarter of 2017 (January to
14  March). This information was listed on Anovos' website, below the
15  photograph of the item (similarly to the typical representation provided by
16  Anovos). Mr. Catalano observed anticipated delivery dates prior to the
17  purchasing of the item.

18  74.  Similarly to all other pre-order items, following the detailed description of the
19  item, Anovos provided the link to delivery "Update page," which further
20  confirmed that the order was scheduled to arrive in Q1 2017.

21  75.  Mr. Catalano received automatic email notification updates from
22  support@anovos.com that the order will be delayed. These email notifications
23  are similar to the email delays received by other Plaintiffs and class members.

24  76.  On or about June 16, 2017, Mr. Catalano was notified via email that the jacket
25  was "in production with the manufacturer" and instead of "originally
26  anticipated production" in spring of 2017, the new shipping estimate was
27  "summer 2017."

28

77.   Another email update was sent out on August 11, 2017, where Mr. Catalano was advised that the jacket "remain[ed] on track for delivery during Summer 2017."

78.   On September 14, 2017, Mr. Catalano was again informed that the jacket "remain[s] in production with [Anovos'] manufacturer" and after explaining more reasons for delay, pushed the delivery date to Fall 2017:

> During production we discovered that the simple chemical adhesion that was used to attach the hard pieces (seen on the chest, upper arms and back) did not hold up to time and resulted in these pieces falling off in the long term. This was evident in both the original prototype as well as the screen-used jackets. Thus, in order to prevent this occurrence in the final product, we redesigned these hard pieces so that they have a built in "butterfly" clasp that clings to the interior of the garment between the exterior fabric and the interior lining. This unexpected, but ultimately necessary, change caused an additional delay since these hard pieces must now be added in during assembly of the jacket. While we recently anticipated production to be complete in time for a summer delivery, it was determined that this is unfortunately not the case. As such, we have updated our shipping estimate to Fall 2017.

79.   On November 8, 2017, Mr. Catalano received another email pushing the production to December 2017:

> I am writing to notify you of a recent update to your order #ANOVOS-26333 for the Star Trek: Beyond - Starfleet Survival Suit Men's Jacket. Please visit this product's update page on the ANOVOS Shipping Calendar on our website for more information. Click Here For Update! [. . .]

> The "Update" link further informed of the following:

We previously anticipated production to be complete in time for a Fall delivery. However, it was recently determined that this is unfortunately not the case. As noted in our September update, we have redesigned the hard pieces that are used on this jacket. Unfortunately, the manufacture of these hard pieces is taking longer than previously anticipated. In reviewing the effect this delay has upon our production timeline, we must update our shipping estimate to Winter 2017 (December 22nd, 2017 - March 20th, 2018).

80.   On February 26, 2018, another emailed followed now pushing the delivery dates to Spring 2018:

We are finalizing the integration of the hard pieces into the assembly process and our manufacturer says this will be completed in early Spring. We have to allow time for the items to arrive from manufacturing and have adjusted the availability of these to ship from our fulfillment center to late Spring. We all look forward to being able to ship these superb jackets in Spring 2018 (March 20th-June 20th), and we will ship these to you in the order they were purchased. You will receive an email notification when yours is on deck to ship.[ . . .]

81.   On April 30, 2018, Mr. Catalno received the following email confirming anticipated delivery date in Spring 2018 (and also informing of an increased pricing for the jackets for new purchasers), which is omitted:

Hello A.J. Catalano

This is Reggie from ANOVOS with an update about your order #ANOVOS-26333 for the Star Trek: Beyond - Starfleet Survival Suit Jacket.   Production of these beautiful jackets remains smooth and they continue to be on schedule to be completed in Spring 2018. There is a possibility however that they may not arrive into our Fulfillment Center until the end of June and once they are received, they need to go through one final quality control check and then they will begin shipping.

---

82. Then on June 4, 2018, the Spring delivery became Summer 2018 delivery.

83. On August 21, 2018, Mr. Catalano received the following email now informing him that the delivery is scheduled for Summer/Fall 2018:

> This is Reggie from ANOVOS with new information about your order [order number] for the **Star Trek: Beyond - Starfleet Survival Suit Jacket.** I am pleased to report that this beautiful jacket is currently awaiting final approvals and remains on track to begin shipping to customers towards the end of Summer and into Fall 2018[ . . .]

84. To date, the order has not arrived.

85. While still under the impression that Anovos would fulfill his first order, on November 7, 2017, Mr. Catalano made his second order for a "Star Trek Discovery Starfleet Phaser Pistol Interactive Prop Replica (Reservation - Wave 2)."

86. On November 7, 2017, in California, Mr. Catalano paid online, and Anovos received, $572.27 inclusive of shipping and taxes.

87. At the time of purchase, on Anovos' website, Anovos falsely represented to Mr. Catalano the delivery dates in similar fashion to those of his previous order. Specifically, Anovos represented that the second order was scheduled to arrive by March of 2018.

88. Despite Anovos' representations that Mr. Catalano's orders will be fulfilled, over two years after his first purchase, Mr. Catalano has now realized that Anovos will not fulfill its obligations and provide Mr. Catalano with his fully paid for products.

89. Had Anovos represented to Mr. Catalano that it does not anticipate fulfilling the orders and only intend to abscond with Mr. Catalano's moneys, Mr. Catalano would not have made the purchases.

Plaintiff Matthew Fernandes

90.    Similarly, Mr. Fernandes was induced by Defendants marketing to purchase a "Star Wars: The Last Jedi First Order Stormtrooper Helmet Accessory" for $225.00 and a "Handling" fee of $12.00 on January 17, 2018.

91.    He was further inclined to make this purchase due to Anovos' false representations that the Stormtrooper Helmet Accessory would be delivered in the Fall of 2018. Mr. Fernandes observed these false estimates of delivery on Anovos' website at the time of purchase. These representations were made by Anovos in a similar fashion—on the date of purchase, under the photograph of the pre-order items—in that Anovos made a statement regarding the estimated delivery dates.

92.    Additionally, with this pre-order purchase, Mr. Fernandes was required to pay shipping of $24.29 and a California State Tax in the amount of $16.31 for a total of $277.60.

93.    Mr. Fernandes made this purchase with the reasonable expectation that he would receive the "Star Wars: The Last Jedi First Order Stormtrooper Helmet Accessory" by Fall of 2018.

94.    At the time of his purchase, Mr. Fernandes did not know, and had no reason to know that over a year and a half later, he would not receive his purchase nor a refund.

95.    Mr. Fernandes relied on Anovos' deceptive emails, blogs and reassurances that despite the fact that Anovos' estimated shipping dates came and went, Mr. Fernandes could expect his fully paid for product soon. Anovos representations in the email updates to customers are depicted on their Stormtrooper Update page here: https://www.anovos.com/pages/the-last-jedi-first-order-stormtrooper-helmet-updates. The emails to customers would be sent out on the date of the update.

96.   For example, on or around September 17, 2018, Mr. Fernandes received an email update from Anovos (similar to the updates received by Mr. Catalano and other Plaintiffs) stating in part, the following:

> This is Reggie from ANOVOS with new information about your order #ANOVOS-50281 for the **STAR WARS: THE LAST JEDI First Order Stormtrooper Helmet Accessory**. We had previously planned to receive these items in time to deliver to customers this Fall. However after reassessing current timelines and other projects with the production team responsible for these helmets, we have to reschedule the future delivery projection of the current run to Winter 2018. We will continue to diligently monitor production progress, and if a determination is made that this helmet will complete at an earlier time I will notify you via a future update.

97.   However, Mr. Fernandes' items were not delivered in the Winter of 2018.

98.   In fact, to date, Anovos is selling the pre-order item, making similar representations that now the helmet is scheduled to arrive between July 1, 2019, through September 30, 2019:[5]



---

[5]  https://www.anovos.com/collections/star-wars-helmets/products/star-wars-the-last-jedi-first-order-stormtrooper-helmet-accessory

1    [ . . . ]

2

3    **Order Information**

4    • **Delivery Estimate Q3 2019 (July 1, 2019 - September 30, 2019):** All items are subject to change in availability,
     features, and delivery dates at any time and for any reason. Customers with outstanding orders will be notified via email

5    within 30 days of such changes. Once this item is In-stock, it takes 10-14 business days for processing prior to shipment.
     Shipping times will vary by carrier and distance to the receiver. At the time of shipment, customers will receive an email

6    notification that includes their order tracking number. A link to the most recent brand update can be found here.

7    • **Shipping and Handling**
     Payment for the order is remitted at the time the order is placed, in addition to shipping and handling for this item. Shipping

8    and handling does NOT include customs fees, brokerage, or any taxes; those are charged separately for international locales
     by the appropriate agency.

9

10   99.    In 2019, Mr. Fernandes, realizing that his order will not get fulfilled and that

11          Anovos' representations regarding deliveries and anticipated availability of

12          the items were completely false, reached out to Anovos on numerous

13          occasions to request his refund from his home in California.

14   100.   Repeatedly Anovos assured Mr. Fernandes that his products would arrive

15          shortly. First, on March 14, 2019, Anovos indicated Mr. Fernandes would

16          receive his purchased items no later than late March/early April. Then, on

17          March 19, 2019, in response to Mr. Fernandes' inquiries, Anovos stated the

18          products would be delivered between March 20, 2019 and June 20, 2019.

19          Further, Anovos represented that the production of Mr. Fernandes' pre-

20          ordered items was completed.

21   101.   Despite his multiple requests for a refund, Anovos, previously responsive

22          regarding anticipated delivery dates, immediately ceased to communicate

23          with Mr. Fernandes.

24   102.   Mr. Fernandes then in May 2019, contacted Disney's representative,

25          coordinator of LucasFilm licensing (Jessica Santin), to complain regarding

26          Anovos' practices. At that time Disney's representative stated that she was, in

27          fact, aware of the issues regarding unfulfilled orders, and advised Mr.

28          Fernandes that she will escalate the issues with Anovos.

103. However, even with Disney's awareness, as of October 15, 2019, Mr. Fernandes did not receive his order or refund, despite Anovos' continued representations on its website that the helmet was in the process of shipment in Q3 2019.

<u>Plaintiff Andre Joseph</u>

104. Anovos' presence in the comic scene, its advertising, approval by the Licensors, and at the time good reputation all enticed Mr. Joseph to make two Anovos purchases.

105. On September 4, 2016, Mr. Joseph ordered a "Star Trek: Beyond — Starfleet Survival Suit jacket (PRE-ORDER) and paid Anovos $559.35 for the jacket, shipping and New York State and County taxes (Order # 17-1345).

106. Based on Anovos' representations on its website at the time of purchase, Mr. Joseph believed his item would be delivered in the summer of 2017.

107. On August 11, 2017, Mr. Joseph received the following automatic email updates from Anovos (similar to all other Plaintiffs):

> Hello Andre Joseph,
>
> I am happy to inform you that your pre-order #ANOVOS-17-1345 for the Star Trek: Beyond Starfleet Survival Suit Men's Jacket remains on track for delivery during Summer 2017. I will continue to notify you of this item's progress as more details become available.
>
> Should you need to make any changes to your order, or if you have moved since placing your order and need to update your delivery address, please contact our Customer Service Team either by responding to this email or through Live Chat on ANOVOS.com from Monday-Friday, 9am-5pm PDT
>
> Sincerely,
>
> Ezra Parish

1    Customer Supply Liaison

2    108.  On September 14, 2017, Anovos sent another email that provided an updated

3           Shipping Calendar, estimating the delivery date now in Fall of 2017:

4
          Dear Andre Joseph,
5

6           I am writing to notify you of a recent update to your order

7           #ANOVOS-17-1345 for the Star Trek: Beyond - Starfleet

           Survival Suit Men's Jacket. Please visit this product's
8
           update page on the ANOVOS Shipping Calendar on our
9           website for more information. Click Here For Update!

10
          Should you need any assistance with your order, please
11           feel free to reach out to our Customer Service Team either

12           by responding to this email or through Live Chat on

13           ANOVOS.com from Monday-Friday, 9am-5pm PDT

14
          Sincerely,
15           Ezra Parish

16           Customer Supply Liaison

17    109.  Similarly to the September 14 email, additional updates were sent on

18           November 8, 2017, February 26, April 30,   June 4th, and August 21, 2018.

19           Each update provided the same link to customers and explained further

20           delayed deliveries.[6]

21

22

23

24

25

26    ───────────
      [6]  https://www.anovos.com/pages/star-trek-survival-jacket-beyond-updates?
27    utm_source=Pre-Order+Updates+List&utm_campaign=4293059d6f-
      EMAIL_CAMPAIGN_2017_09_14&utm_medium=email&utm_term=0_c1e41d0f
28    71-4293059d6f-306218233&mc_cid=4293059d6f&mc_eid=ab03147fe3

110. As of January 3, 2019, Anovos reported the jacket to be about finished.[7] However, to date, this item is not being shipped, and is advertised by Anovos as scheduled for delivery in Q4 (October 1, 2019 - December 31, 2019).[8] Although now the jacket is being shown as in "development" stages.

111. Prior to realizing Anovos' plan to abscond with his money, Mr. Joseph purchased a second item on November 11, 2017.

112. Mr. Josephs' November 11, 2017, online purchase was for a Star Trek Discovery Starfleet Phaser Pistol Interactive Prop Replica (Reservation — Wave 3) for $533.88 (Order #47133).

113. At the time of Mr. Josephs' November 2017 purchase, according to Anovos' shipping calendar (on the delivery Updates page), the *latest* pre-order item at the time was scheduled for shipment in the Summer of 2018.

114. As such, on September 4, 2016, and November 11, 2017, Mr. Joseph paid and Anovos received $559.35 and $533.88 inclusive of shipping and taxes.

115. Mr. Joseph received nearly identical notices for his second purchase (Order #47133), continuously delaying his orders. As the original expected delivery date approached, Anovos made repetitive, subsequent, and false promises to Mr. Joseph indicating the items would be arriving in the following quarter/ season. Stringing Mr. Joseph along, beyond the point of being able to dispute the charges with his bank, Anovos assured Mr. Joseph, his orders would be fulfilled soon.

116. Despite Defendants' representations that Mr. Joseph's orders will be fulfilled, over three years after his first purchase, Mr. Joseph has accepted the fact that

---

[7]  https://www.anovos.com/pages/star-trek-survival-jacket-beyond-updates? utm_source=Pre-Order+Updates+List&utm_campaign=4293059d6f- EMAIL_CAMPAIGN_2017_09_14&utm_medium=email&utm_term=0_c1e41d0f 71-4293059d6f-306218233&mc_cid=4293059d6f&mc_eid=ab03147fe3

[8]  https://www.anovos.com/collections/star-trek/products/star-trek-beyond-starfleet- kelvin-jacket-pre-order.

1    Defendants will not fulfill their obligations and provide Mr. Joseph with his

2    fully paid for products.

3    117. To date, despite Anovos' empty promises, Mr. Joseph has not received either

4    item.

5    <u>Plaintiff Alexander Alonso</u>

6    118. For his love of Star Wars and Disney's endorsements of Anovos products, on

7    April 18, 2018, Mr. Alonso purchased, online, a "Star Wars Luke Skywalker

8    Rebel Pilot Helmet Accessory" for $390.92 including a $12.00 "Handling"

9    fee and $39.77 UPS shipping costs (Order # 53145).

10   119. When making this purchase, Mr. Alonso anticipated to receive his purchased

11   items by October of 2018 because Anovos' website reflecting the item and

12   Anovos' shipping calendar  (delivery Update page) stated the Luke Skywalker

13   Rebel Pilot Helmet Accessory would be shipped in the Fall of 2018.

14   120. Upon payment on April 18, 2018, Mr. Alonso received a confirmation email

15   indicating his product would be shipped to his address.

16   121. As typical with other Anovos products, Anovos extended the delivery dates

17   quarter by quarter,.

18   122.  Over a year has passed since the original anticipated delivery date, and Mr.

19   Alonso has not received his purchase.

20   123. Anovos has failed to ship Mr. Alonso's order despite receiving full payment

21   plus shipping for said order.

22   124. Although Mr. Alosno has completely performed his obligations—full

23   payment of the products in addition to shipping costs— a year after the agreed

24   upon shipping date, Anovos has still not provided Mr. Alosno with his

25   promised item.

26   ///

27   ///

28   ///

Plaintiff Randolph Jones

125. On July 28, 2018, Mr. Jones purchased a "Star Trek: The Final Frontier - Captain Kirk Bomber Jacket (2018 Pre-Order - Wave 3)" for $350.00 (Order # 56763).

126. At the time of his purchase, Anovos provided a "seasonal system" to indicate shipping estimates which Mr. Jones observed.

127. If a product stated it would be delivered in "Spring," the shipping estimate was March 20 - June 20; "Summer" was June 21 - September 21; "Fall," was September 22 - December 21; and "Winter" was December 22 - March 19.

128. Similar to the prompts described above, consumers (including Mr. Jones) were directed to a "shipping calendar" where specific dates for pre-order items were listed.



STAR TREK: THE FINAL FRONTIER - Captain Kirk Bomber Jacket (2018 Pre-Order - Wave 3)

$ 350.00

| Star Trek™ | |
|---|---|
| Beyond - Survival Men's Jacket | SPRING/ SUMMER 2018 |
| Beyond - Survival Women's Jacket | SPRING/ SUMMER 2018 |
| Discovery - NCC-1227 U.S.S. Shenzhou, Walker Class Studio-Scale Starship Filming Miniature - Wave One | SPRING 2018 |
| Discovery - NCC-1227 U.S.S. Shenzhou, Walker Class Studio-Scale Starship Filming Miniature - Wave Two | FALL 2018 |
| Discovery - NCC-1227 U.S.S. Shenzhou, Walker Class Studio-Scale Starship Filming Miniature - Wave Three | WINTER 2018 |
| Discovery - NCC-1031 U.S.S. Discovery, Crossfield Class Studio-Scale Starship Filming Miniature - Wave One | SPRING 2018 |
| Discovery - NCC-1031 U.S.S. Discovery, Crossfield Class Studio-Scale Starship Filming Miniature - Wave Two | FALL 2018 |
| Discovery - NCC-1031 U.S.S. Discovery, Crossfield Class Studio-Scale Starship Filming Miniature - Wave Three | WINTER 2018 |
| Discovery - Starfleet Captain's Duty Uniform for Men | WINTER 2018 |
| Discovery - Starfleet Captain's Duty Uniform for Women | WINTER 2018 |

129. Anovos misrepresented the delivery dates to Mr. Jones through the shipping calendar. On the date of purchase, the shipping calendar showed an estimated delivery date in March of 2019. Because this date was shortly after the completion of Mr. Jones' payment plan, he was eager to make this purchase and promptly complete all of his payments. Mr. Jones relied on Anovos' representations made on its website regarding the estimated delivery dates at the time of his online purchase.

130. Accordingly, Mr. Jones entered into a payment plan contract with Anovos. According to the payment plan, by submitting Mr. Jones' order, he was authorizing charges on his card and to be legally bound as follows:

> "I, Randolph Jones, acknowledge that I authorize partial.ly [sic] to charge $110.25 on behalf of ANOVOS Production LLC today, and $42.88 on the following payment dates. . ." $42.88 on the 28th of each month ending on January 28, 2019.

131. Mr. Jones has made each payment timely.

132. Mr. Jones believed he would receive his jacket upon the completion of the payment plan, however, the item's delivery is continuously being delayed.

133. In response to any updates regarding the "Captain Kirk Bomber Jacket" a typical Anovos response delaying shipment in March of 2019 was "In regards to the Captain Kirk Bomber jacket our team quickly realized that to perfectly reproduce this item they would need more time as we are not willing to compromise on quality on this very complex jacket. We apologize for this inconvenience and thank you for your patience with us!"

134. However, to date the jacket has not been shipped.

135. Currently, Anovos is selling this same pre-order item, making similar representations to consumers, only now the jacket is scheduled to arrive Q1 (January to March 2020).[9]



136. Anovos is accepting full payments plus shipping from consumers for the very same item it has been unable to manufacture, produce, and ship to Mr. Jones for the past year.

<u>Anovos' Recent Representations to the Public</u>

137. Anovos has blatantly lied to the public indicating items have been shipped and are out for delivery, then again extends the delivery date for months into the future only to repeat the process. One example is represented in an Anovos order page stating:

> Great news! Production is finished and we anticipate receiving these late February and anticipate shipping to our customers to begin March 2019 and beyond in waves. Once these start going out we will update everyone again

---

[9] https://www.anovos.com/collections/star-trek/products/star-trek-the-final-frontier-captain-kirk-bomber-jacket

here to that effect. Thank you again for your patience and perseverance through this long process. This item is exceeding our expectations in every way and we know you will love it as much as we do!

Archived Updates

September 4th 2018: The production of these items has been completed this season. We are awaiting notification from our manufacturer as to when these ensembles will be loaded upon a ship to be delivered to us, a journey that may take several weeks. As it is unlikely that these items will arrive to our Fulfillment Center prior to the end of the Summer season due to this transit time, this ensemble is currently on track to ship Fall 2018. Once I have a firm date that shipping to customers will begin, I will notify you in a separate update.

August 23rd, 2018: This ensemble remains on track to ship Summer 2018 into Fall. The final approvals are currently in process and we expect these items to arrive to our Fulfillment Center very soon. Once a firm date has been established that shipping to customers will begin, you will be notified via a separate update.

June 10th, 2018: This Ensemble is currently undergoing safety testing and remains on schedule to begin delivery to customers in Spring and into Summer 2018.

March 9th, 2018: This item has completed production and is on its way to our fulfillment center. We anticipate receiving these items into our fulfillment center in March and have adjusted our schedule to Spring 2018 shipping to customers to reflect this.

138. These items were then subsequently pushed once again to Summer 2019 for delivery, but have yet to be delivered.

139. Ultimately, on April 11, 2019 —years after Plaintiffs' purchases—Anovos announced, on its website, the cause of the shipping delays Plaintiffs and consumers alike were experiencing:

> [W]hen a product had production issues and became delayed, we would push out the delivery date. This change cause some customers to cancel their orders, and in some ways, resulted in a buying habit of waiting until an item was in-stock prior to making a purchase. However, this "wait and see" behavior frequently backfired on the customer since the majority of our items are produced to meet a minimum order quantity, leaving little—if any—inventory available after pre-orders were fulfilled. As an unintended consequence, cancelations of pre-orders caused a gradual shrinkage of overall production budget. Fewer pre-orders let to a number of issues including an increase in raw goods pricing, increase in per unit cost, a deprioritizaiton of product and —in some extreme cases—the cancellation of items that no longer met the factory's minimums.[10]

140. Between September 4, 2016 and July 28, 2018, Anovos accepted Plaintiffs' payments.

141. However, Anovos has still not delivered its pre-ordered and pre-paid products to either Plaintiff. Defendant Disney to date, continues to license its trademarks to Anovos, and despite consumers' complaints and Disney's representation to customers that it would escalate the issues with Anovos, it has not done so.

142. Further, to date, Anovos has not issued any refunds to Plaintiffs, or other individuals who similarly purchased Anovos' products.

143. Instead, it continues to advertise and sell the pre-ordered items from 2016, 2017, and 2018, which have yet to be manufactured.

144. Anovos has recently announced on April 11, 2019, its new "all sales are final" policy, whereby refunds for pre-ordered (non-delivered) products placed in the future can no longer be issued.

145. Despite this "new" announcement, regardless of Anovos' purported policy in place, Anovos has often failed to provide refunds to consumers, even though they have not provided consumers with promised products or consumers have not received products for years.

---

[10] https://www.anovos.com/blogs/news/the-refund-issue (internal parenthetical omitted).

146. Further, despite this policy being "new," Anovos has not refunded numerous clients, including Plaintiffs herein.

Disney's Practices

147. Despite Anovos' inability to fulfill the hundreds, if not thousands of pre-paid orders customers have already submitted, Defendants continue to market and sell pre-order items on its website, on social media, and at conventions in the same manner: requiring full upfront costs of the items in addition to shipping.

148. In addition to supplying the photography and assets necessary for Anovos to recreate and sell Star Wars props and costumes, Disney has avidly promoted and encouraged consumers to purchase Star Wars licensed products from Anovos.

149. In December of 2016, Disney, through its website, starwars.com, advertised: "Looking to crush the Rebellion on a beautiful beach-world? You'll need this: ANOVOS' awesome new *Rogue One: A Star Wars Story* shore trooper helmet, revealed exclusively here on StarWars.com." Following this promotion, Disney stated, "The helmet will ship in January of 2017."

150. Similarly, following the San Diego Comic-Con 2016, Disney published an article raging about a costume, "The Force Awakens" "designed by the folks at ANOVOS" worn by celebrity Adam Savage. Within the article, Anovos' elaborate costume was fitted for Mr. Savage in June and ready in time for the Comic-Con on July 21, 2016.

151. Furthermore, to this day, Anovos, on its website, continues to market, sell, and accept payments for pre-orders of the "Star Wars: The Last Jedi First Order Stormtrooper Helmet Accessory" (the pre-order item Mr. Fernandes has yet to receive), now charging $350 for the item, despite being unable/ unwilling to fulfill Mr. Fernandes' order over two years ago.

152. In numerous instances, after years of not receiving their promised products, consumers reached out directly to Disney regarding their concerns about Anovos.

153. Generally, consumers' complaints were forwarded to Disney's representative Jessica Santin, Disney's "Coordinator, Lucasfilm Licensing, Hardlines."

154. In response, Ms. Santin from Jessica.Santin@disney.com  stated:

> Thank you for your emails. They were forwarded to me as I help oversee the Anovos business relationship. First of all, I want to apologize for the experience you have had with Anovos and the delay you have encountered with your refund request. I have escalated your email to Anovos for immediate review and response.

> Please know, at the Walt Disney Company, we take customer service very seriously and the delay you have encountered with this company does not live up to our standards. If you do not receive an update on your purchase, please do not hesitate to get in touch with me.

or some derivative thereof.

155. This year, consumers have also reached out to Stacy.Barninger@disney.com, only to be ignored.

156. Mr. Fernandes is not the only person who reached out and complained to Ms. Santin. In fact. Ms. Santin indicated to Mr. Fernandes that she was aware of other complaints by consumers and reassured Mr. Fernandes that she would escalate this issue with Anovos.

157. In many instances, consumers have tried to contact Anovos and Disney to cancel their orders and obtain refunds, but have either been unable to reach Defendants or are told to simply wait.

158. Upon information and belief, Anovos must pay a minimum guarantee to Disney.

159. Typically, a licensee only pays royalty fees once a minimum guarantee has been paid off. Thus, however much Anovos paid Disney on release of their licensed products, Anovos would only pay royalties once the products net sales exceed that amount paid.

160. Over the lifetime of the individual licensing agreements between Disney and Anovos, Disney has collected its minimum guarantees and is further incentivized to have Anovos continue sales in order for Disney to collect earned royalty income therefrom.

161. Upon information and belief, Disney is the owner of everything Anovos designs, creates, markets and sells as Star Wars.

162. Upon information and belief, Disney is responsible for approving licensed products, packaging, marketing, and collateral materials.

163. Throughout Anovos' advertisements whether on its own website or social media, Disney's Star Wars logo is prominently featured on each promotional material and product.

164. Similarly, Disney itself provides Anovos with pieces to ultimately be recreated, either through photography or actual screen used artifacts.

165. Should Anovos fail to meet agreed upon quality standards, Disney can order Anovos to stop the production of said product.

166. Disney further promotes the sale of Anovos products, and eludes that the high quality products would be ready in time for certain holidays, events, deadlines, etc.

167. Plaintiffs are informed and believe that tens if not hundreds of consumers reached out to Disney directly regarding their missing Anovos products.

168. A quick and simple search of Anovos on the internet reveals Anovos' fraud through the Anovos Boycott Facebook page, Anovos' "F" rating on BBB, and hundreds of blogs detailing consumers' terrible experiences with Anovos.

169. Accordingly, Disney had a duty to supervise Anovos' use of the Disney's mark.

170. Disney knew or should have known of Anovos' scheme. Nevertheless, Disney profited from the scheme by permitting Anovos to use its well-known names and trademarked logos to induce and target consumers to become Anovos customers.

171. Disney, through its licensing and promotions, as well as subsequent Ms. Santin's inept assistance, created and maintained a danger to consumers.

172. There is a causal nexus between Disney and Anovos. Disney awarded Anovos the Star Wars replica and costume licenses thereby approving Anovos' decisions to advertise, market, design, and distribute such costume and replica memorabilia.

173. While Disney acknowledged the complaints against Anovos and Anovos' inability to adhere to the purchase agreements it made with consumers, Disney still renewed Anovos' licensing agreements and permitted Anovos to continue to defraud consumers.

174. Throughout the proposed class period, Anovos' conduct was on behalf of and with the authorization of Disney in a coordinated effort to earn profit on Star Wars memorabilia.

175. Disney maintained profits from its licensing agreement with Anovos at the expense of consumers.

176. Consequently, Anovos' illegal actions were the responsibility of Disney both directly and vicariously. Therefore, Disney is liable for Anovos' unlawful conduct discussed herein as it pertains to its licensed products.

177. Despite notice of errors, lack of oversight, deliberate ignorance of complaints, Defendants continue their unlawful and fraudulent practices, subjecting consumers not only to substantial stress, frustration, and anxiety, but also economic damages—Defendants' deposit of unearned payments.

178. In truth and in fact, consumers have not received certain pre-ordered and pre-paid products. Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' conduct.

179. Defendants took advantage of Plaintiffs and consumers alike through their joint oppressive and fraudulent conduct, including but not limited to inducing consumers into purchasing items they did not have the intentions nor ability to produce, then for years continuously requesting consumers pre-order items all the while stalling at production of the products.

**Class Action Allegations**

180. Plaintiffs and the members of the Class have all suffered injury in fact as a result of the Defendants' unlawful and misleading conduct.

181. The "Class Period" means January 1, 2016 through the present.

182. Plaintiffs bring this lawsuit individually and on behalf of other consumers similarly situated. Subject to additional information obtained through further investigation and/or discovery, the proposed "Class" and a Disney Subclass consists of:

> All persons with a California, Washington, Florida, and or New York billing address who paid for a pre-order product(s) from Anovos, and who have not received the product nor a refund from January 1, 2016 through the present.

> Disney Subclass:
> All persons with a California, Washington, Florida, and or New York billing address who paid for a pre-order product(s) from Anovos that was(were) licensed by Disney and who have not received the product nor a refund from January 1, 2016 through the present.

183. Excluded from the Class and Disney Subclass are Defendants and any of Defendants' officers, directors, and employees. Plaintiffs reserve the right to

modify or amend the Class and Disney Subclass definition before the Court determines whether certification is appropriate.

184. *Ascertainability.* The members of the Class and Disney Subclass are readily ascertainable from Defendants' records, as well as through public notice.

185. *Numerosity*. The members of the Class and Disney Subclass are so numerous that their individual joinder is impracticable. Plaintiffs are informed and believe, and on that basis allege, that the proposed class consists of thousands of members.

186. ***Existence and Predominance of Common Questions of Law and Fact***. Common questions of law and fact exist as to all members of the Class and Disney Subclass, and predominate over any questions affecting only individual Class members. All members of the Class and Disney Subclass have been subject to the same conduct and their claims are based on the standardized marketing, advertisements, delays, and policies of Defendants. The common legal and factual questions include, but are not limited to, the following:

- Whether Defendants' shipping estimations are untrue, or are misleading, or likely to deceive reasonable consumers;
- Whether Defendants made representations that they will fulfill customers' orders;
- Whether Defendants failed to fulfill customers' orders;
- Whether Defendants' representations were fraudulent;
- Whether Defendants made similar representations to the class members;
- Whether Class Members are entitled to restitution;
- Whether Defendants received the moneys that belong to the Class members;
- Whether the Class Members are entitled to injunctive relief.

- Whether Defendants' conduct in requiring consumers pay full price for pre-order items and then not deliver them is misleading or unlawful within the meaning of California Business & Professions Code §§ 17200, *et seq.*; and Florida Deceptive and Unfair Trade Practices Act §§ 501.201-501.213;

- Whether Anovos' conduct in requiring consumers pay full price for pre-order items and then not deliver them is misleading or unlawful within the meaning of New York General Business Law §§ 349 and 350; and Washington Unfair Business Practices § RCW 1986.02 *et seq.*

- Whether Defendants' conduct is a fraudulent act or practice within the meaning of California Business & Professions Code §§ 17200, *et seq*;

- Whether Defendants' conduct is an unfair act or practice within the meaning of California Business & Professions Code §§ 17200, *et seq*;

- Whether Defendants' advertising is unfair, deceptive, untrue or misleading within the meaning of California Business & Professions Code §§ 17200, *et seq*;

- Whether Defendants' conduct and advertising is unconscionable within the meaning of Florida Statute §§ 501.201-501.213.;

- Whether Defendants' advertising is false, untrue, or misleading within the meaning of California Business & Professions Code §§ 17500, *et seq.*;

- Whether Anovos' advertising is false, untrue, or misleading within the meaning of New York General Business Law §§ 349 and 350;

- Whether Defendants' conduct violated the CLRA (Cal. Civ. Code 1750 *et seq.*);

- Whether Defendant, through its conduct, received money that, in equity and good conscience, belongs to Plaintiffs and members of the Subclass;

- Whether Plaintiffs and proposed members of the Class are entitled to equitable relief, including but not limited to restitution and/or disgorgement; and

- Whether Plaintiffs and proposed members of the Class are entitled to injunctive relief sought herein.

187. ***Typicality***. Plaintiffs' claims are typical of the claims of the members of the Class in that Plaintiffs are each a member of the Class Disney Subclass: that Plaintiffs seek to represent. Plaintiffs, like members of the proposed Class, purchased pre-order Anovos' products licensed by Disney and never received these products. Plaintiffs are advancing the same claims and legal theories individually and on behalf of all absent members of the Class. Defendants have no defenses unique to Plaintiffs.

188. ***Adequacy of Representation***. Plaintiffs will fairly and adequately protect the interests of the members of the Class and Disney Subclass. Plaintiffs have retained counsel experienced in consumer protection law, including class actions. Plaintiffs have  no adverse or antagonistic interest to those in the Class, and will fairly and adequately protect the interests of the Class and Disney Subclass:. Plaintiffs' attorneys are aware of no interests adverse or antagonistic to those of Plaintiffs and proposed Class and Disney Subclass.

189. ***Superiority***. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individualized litigation would create the danger of inconsistent and/or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and court system and the issues raised by this action. The damages or other financial detriment suffered by individual Class and Disney Subclass members may be relatively small compared to the burden and expense that would be entailed by individual litigation of the claims against Defendants. The injury suffered by each individual member of

1  the proposed class is relatively small in comparison to the burden and expense
2  of individual prosecution of the complex and extensive litigation necessitated
3  by Defendants' conduct. It would be impractical for members of the proposed
4  Class and Disney Subclass to individually redress effectively the wrongs to
5  them. Even if the members of the proposed Class and Disney Subclass could
6  afford such litigation, the court system could not. Individualized litigation
7  increases the delay and expense to all parties, and to the court system,
8  presented by the complex legal and factual issues of the case. By contrast, the
9  class action device presents far fewer management difficulties, and provides
10  the benefits of single adjudication, economy of scale, and comprehensive
11  supervision by a single court.

12  190. Unless the Class and Disney Subclass are certified, Defendants will retain
13  monies received as a result of Defendants' unlawful and deceptive conduct
14  alleged herein. Unless a class-wide injunction is issued, Defendants will
15  continue to take payments for pre-orders from consumers without delivering
16  said orders, and members of the public will continue to be misled, while
17  members of the Class and Disney Subclass will continue to be harmed, and
18  denied their rights under California, Washington, New York, and Florida state
19  laws.

20  191. Moreover, Defendants have acted or refused to act on grounds that are
21  generally applicable to the class, so that declaratory and injunctive relief is
22  appropriate to the Class and Disney Subclass as a whole, further making class
23  certification appropriate.

24  **First Cause of Action**
25  **Fraud**
26  **(Plaintiffs v. Anovos)**

27  192. Plaintiffs repeat, re-allege, and incorporate by reference, all of the above
28  paragraphs of this Complaint as though fully stated herein.

193. From March 22, 2016, through and including December 11, 2018, Anovos fraudulently requested payments for products that Anovos did not intend to deliver to Plaintiffs.

194. At the time of each Plaintiffs' online purchases, Anovos agreed to produce and deliver certain products by a certain date.

195. Plaintiffs were not obligated to pay full price for products Anovos could not and would not provide Plaintiffs. Thus, the amounts demanded by Anovos' advertisements were false and inaccurate in an attempt for Defendants to maximize unearned profits.

196. Since the inception of its Star Wars licensing agreement, Anovos, in attempt to maximize its profits, fraudulently began demanding and retaining Plaintiffs and class members' payments for certain products as well as shipping that were not and will never be shipped.

197. Anovos failed to disclose that it was charging Plaintiffs monies that were never earned i.e. fees that were not going towards products Plaintiffs and the class would receive.

198. Plaintiffs reasonably believed that Anovos would deliver the products purchased.

199. Plaintiffs reasonably relied first on the truthfulness of Anovos' online advertisements, such as the shipping calendar with quarterly shipping dates for the year, the estimated shipping dates Anovos provides to consumers at the time of each purchase, and Anovos' continuous notifications that despite delays in shipping, products would still be delivered to consumers.

200. As a result of Anovos' fraudulent misrepresentations, concealment of the true nature of pre-orders, and refusals to refund monies to Plaintiffs and consumers alike, Plaintiffs and the class suffered great economic injury.

201. Plaintiffs allege the "who, what, when, where, and how" of the alleged deception by Defendants as follows:

- The "who" is Defendant, Anovos;
- The "what" are Anovos' false representations that pre-order items  (i) will soon be manufactured; (ii) will be shipped to consumers by certain dates; and (iii) that the orders will be fulfilled.
- The "when" is the dates Plaintiffs' purchased Anovos' products, which vary: for Mr. Fernandes, Anovos made its initial false representations on or about January 17, 2018; for Mr. Catalano Anovos' first representations were made on or about  September 4, 2016 and November 7, 2017 during his purchases; for Mr. Alonso, April 18, 2018; and for Mr. Joseph, September 4, 2016; for Mr. Jones, July 28, 2018. Anovos' misrepresentations continue up to date, as they continue to falsely represent to consumers that the pre-ordered items will be delivered, and continue to sell the items through "pre-orders" despite knowing that within the last three years, the significant majority of orders have yet to be fulfilled. Essentially, at the time of purchases Anovos falsely represents the anticipated dates of delivery on its website. Thereafter, it sends email updates to customers postponing the dates of delivery for various reasons on quarterly basis.
- The "how:" the majority of representations are made online when consumers would purchase the items on Anovos' website on Anovos' "shipping calendar" and under each product description "order information" whereby Anovos indicates a proposed shipping date for a product; some representations were also made through social media, i.e. Anovos' twitter account still promotes pre-order items that will purportedly be delivered within the year, or emails to consumers either confirming shipment dates or notifying consumers of delays as stated *infra*.

202. For example, at the time of Mr. Fernandes' purchase of a Stormtrooper Helmet, Anovos misrepresnted multiple Stormtrooper Helmets were in various production stages on its shipping calendar available to all online consumers.

| | |
|---|---|
| First Order Stormtrooper Executioner Premier Helmet - TLJ | SPRING 2018 |
| First Order Stormtrooper Executioner Standard Helmet - TLJ | SPRING 2018 |
| First Order Stormtrooper Standard Helmet - TLJ | SPRING 2018 |
| First Order Stormtrooper Premier Helmet - TLJ | SUMMER 2018 |
| First Order Stormtrooper Premier Ensemble - TFA | SPRING 2018 |
| First Order Stormtrooper Premier Helmet - TFA | SPRING 2018 |

203. Following Mr. Fernandes' purchase, he received a string of deceptive emails or "chat" responses indicating his items would arrive in the Winter of 2018, then March of 2019, then April of 2019, and Mr. Fernandes has yet to receive the items.

204. Thus, Plaintiffs and the Class seek economic and non-economic damages, punitive damages, attorneys' fees, and litigation costs as a result of Anovos' oppressive and fraudulent conduct.

**Second Cause of Action**

**Breach of Contract**

**(Plaintiffs v. Anovos)**

205. Plaintiffs repeat, re-allege, and incorporate by reference, all of the above paragraphs of this Complaint as though fully stated herein.

206. On September 4, 2016, and November 7, 2017, Mr. Catalano entered into a purchase agreement with Anovos whereby in exchange for $580.54 and $572.27 including shipping costs, Anovos would manufacture and deliver to Mr. Catalano a "Star Trek: Beyond - Starfleet Survival Suit Jacket" (Order #26333) and a "Star Trek Discovery - Starfleet Phaser Pistol Interactive Prop Replica (Reservation - Wave 2)" (Order #47017).

207. The "Star Trek: Beyond - Starfleet Survival Suit Jacket" was scheduled to arrive by March 31, 2017.

208. The "Star Trek Discovery - Starfleet Phaser Pistol Interactive Prop Replica (Reservation - Wave 2)" was scheduled to arrive by March 31, 2018.

209. At the time of both purchases, Mr. Catalano, based on Anovos' representations and basic consumer expectations, believed his products would be shipped within a year of his purchase dates.

210. On September 4, 2016, and November 7, 2017, Mr. Catalano agreed to Anovos' terms by checking off an "agree" box at the time of his online purchase.

211. By checking the "agree box" Mr. Catalano agreed to Anovos' "legal agreements [which] governs [Mr. Catalano's] purchases from Anovos Productions LLC."  If Mr. Catalano, or any other consumer were to not agree with Anovos' terms, Anovos instructs consumers to "NOT PURCHASE OUR MERCHANDISE."

212. In September 2016, and November 2017, Mr. Catalano agreed to Anovos' terms for pre-order items in that "By pre-ordering products, the customer are authorizing ANOVOS to automatically charge your account upon submission of the order and obtain the product when it becomes available at a later date. You may cancel your pre-order (and obtain a full refund) anytime prior to the time the item or items ship, should you so desire it."

213. Anovos then sent Mr. Catalano an order confirmation via email.

214. Although Mr. Catalano has completely performed his obligations under the contract—full payment of the products in addition to shipping costs—Anovos has failed to provide Mr. Catalano with either of the promised items.

***

215. Then on or about January 17, 2018, Mr. Fernandes purchased a "Star Wars: The Last Jedi First Order Stormtrooper Helmet Accessory" and Handling from Anovos' website. (Order # 50281).

216. The estimated delivery for the "Star Wars: The Last Jedi First Order Stormtrooper Helmet Accessory" was Fall of 2018.

217. The estimated delivery was continued several times and it is currently scheduled to arrive by September 30, 2019, which has passed.

218. Mr. Fernandes agreed to and accepted Anovos' terms and conditions, which were substantively the same terms and conditions Mr. Catalano agreed to, as previously stated herein.

219. On January 17, 2018, Mr. Fernandes paid Anovos $277.60 for the product, shipping, and taxes.

220. That same day, Mr. Fernandes received an order confirmation from Anovos, confirming his payment.

221. Like Mr. Catalano, to date, Anovos retains Mr. Fernandes' funds, but has yet to ship Mr. Fernandes his product.

***

222. On September 4, 2016, and November 11, 2017, Mr. Joseph purchased a for $559.35 inclusive of shipping (Order #17-1345); and a "Star Trek Discovery Starfleet Phaser Pistol Interactive Prop Replica (Reservation - Wave 3)" for $533.88, inclusive of shipping costs (Order # 47133).

223. The "Star Trek: Beyond — Starfleet Survival Suit Jacked (PRE-ORDER)" was scheduled to be delivered the Summer of 2017, then Fall of 2017, then

1   Spring of 2018, then Summer of 2018, then Fall of 2018. To date the this
2   order has not arrived.

3   224. The "Star Trek Discovery Starfleet Phaser Pistol Interactive Prop Replica
4   (Reservation - Wave 3)" scheduled to be shipped and delivered in the Summer
5   of 2018. On a quarterly basis, Mr. Joseph received Anovos notifications that
6   the item would be delayed. To date, Mr. Joseph has not received this order.

7   225. Mr. Joseph agreed to and accepted Anovos' terms and conditions, which were
8   substantively the same as those previously stated herein.

9   226. Similarly, when Mr. Joseph placed his September 4, 2016, order, Anovos
10   represented his order would be shipped within a year of his purchase.

11   227. Anovos has failed to ship Mr. Joseph's orders despite receiving full payment
12   plus shipping for said items.

13                                    ***

14   228. On April 18, 2018, Mr. Alonso purchased a "Star Wars Luke Skywalker Rebel
15   Pilot Helmet Accessory" for $390.92 including a $12.00 "Handling" fee and
16   $39.77 UPS shipping costs (Order # 53145).

17   229. When making this purchase, Anovos' shipping calendar stated the Luke
18   Skywalker Rebel Pilot Helmet Accessory would be shipped in the Fall of
19   2018.

20   230. Accordingly, Mr. Alonso agreed to and accepted Anovos' terms and
21   conditions, which were substantively the same as those previously stated
22   herein.

23   231. Upon payment on April 18, 2018, Mr. Alonso received a confirmation email
24   indicating his product would be shipped to his address.

25   232. Anovos has failed to ship Mr. Alonso's order despite receiving full payment
26   plus shipping for said order.

27   233. Although Mr. Alosno has completely performed his obligations under the
28   contract—full payment of the products in addition to shipping costs— a year

1    after the agreed upon shipping date, Anovos has still not provided Mr. Alosno
2    with his promised item.

3                                         ***

4    234.  On July 28, 2018, Mr. Jones purchased a "Star Trek: The Final Frontier -
5          Captain Kirk Bomber Jacket (2018 Pre-Order - Wave 3)" for $350.00 (Order
6          # 56763).

7    235.  At the time of Mr. Jones' July 2018 purchase, the estimated delivery date was
8          March of 2019.

9    236.  Accordingly, Mr. Jones agreed to and accepted Anovos' terms and conditions.
10         Mr. Jones entered into payment plan contract with Anovos. According to the
11         payment plan, by submitting Mr. Jones' order, he was authorizing charges on
12         his card and to be legally bound as follows:

13              "I, Randolph Jones, acknowledge that I authorize
                partial.ly [sic] to charge $110.25 on behalf of ANOVOS
14              Production LLC today, and $42.88 on the following
                payment dates. . ." $42.88 on the 28th of each month
15              ending on January 28, 2019.

16
17   237.  Mr. Jones has made each payment timely.

18   238.  However, Anovos has failed to ship Mr. Jones' order despite receiving full
          payment.
19
20   239.  Although Mr. Jones has completely performed his obligations under the
          contract—full payment of the product— a year after the agreed upon shipping
21        date, Anovos has still not provided Mr. Jones with his promised item.
22
23   240.  As a direct and proximate result of Defendant Anovos' aforesaid conduct,
          Plaintiffs and the Class suffered direct financial harm.
24
25   241.  As a direct and proximate result of Defendant, Anovos' aforesaid conduct,
          Plaintiffs and the Class suffered and will continue to suffer economic
26        damages and the loss of use of the products they were promised.
27

28

242. Therefore, Plaintiffs and the Class are entitled to recover damages, and seek injunctive relief to prevent such conduct in the future.

### Third Cause of Action

### Unfair Competitions Law Under Cal. Bus. & Prof. Code § 17200

### (Fernandes/Catalano v. Defendants)

243. Plaintiffs (for the purposes of this section only, Plaintiffs mean Mr. Catalano and Mr. Fernandes) repeat, re-allege, and incorporate by reference, all of the above paragraphs of this Complaint as though fully stated herein.

244. "Unfair competition" is defined by Business Professions Code Section § 17200 as encompassing several types of business "wrongs," including: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising." The definitions in § 17200 are drafted in the disjunctive, meaning that each of theses "wrongs" operates independently from the others.

245. By and through Defendants' joint and several unlawful conduct alleged in further detail above and herein, Defendants engaged in conduct which constitutes unlawful, unfair, and/or fraudulent business practices, specifically Defendants' unlawful taking of unearned monies, and Defendants' unlawful refusal to issue refunds to consumers.

### A. "Unlawful" Prong

246. Defendants have violated California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(9) and (10) and committed negligent and/or intentional misrepresentation, therefore, Defendants have violated California's Unfair Competition Law ("UCL"), Business & Professions Code §17200, *et seq.*, which provides a cause of action for an "unlawful" business act or practice carried out on members of the California public.

247. Defendants had other reasonably available alternatives to further its business interests, other than the unlawful conduct described herein.

248. Instead Defendants deliberately requested and accepted Plaintiffs and the Class' full payments without the intent to deliver and provide the paid for products.

249. According to 15 U.S.C. 57a, it constitutes an unfair method of competition, and an unfair or deceptive act or practice for a seller:

> (a)(1) To solicit any order for the sale of merchandise to be ordered by the buyer through the mail, via the Internet, or by telephone unless, at the time of the solicitation, the seller has a reasonable basis to expect that it will be able to ship any ordered merchandise to the buyer:
>
> (i) Within that time clearly and conspicuously stated in any such solicitation; or
>
> (ii) If no time is clearly and conspicuously stated, within thirty (30) days after receipt of a properly completed order from the buyer.
>
> and
>
> (b)(1) Where a seller is unable to ship merchandise within the applicable time set forth in paragraph (a)(1) of this section, to fail to offer to the buyer, clearly and conspicuously and without prior demand, an option either to consent to a delay in shipping or to cancel the buyer`s order and receive a prompt refund. Said offer shall be made within a reasonable time after the seller first becomes aware of its inability to ship within the applicable time set forth in paragraph (a)(1) of this section, but in no event later than said applicable time.

250. Plaintiffs allege Defendants solicited and marketed consumers business with an indication that items would be shipped at a certain time. All the while Defendants had no intention and no ability to comply with these shipping dates.

251. Further, the Federal Trade Commission requires that after delaying a product a second time (*see e.g. infra* Plaintiff Matthew Fernandes), Anovos must have received written confirmation from the buyers that that they did not want a refund and would continue to wait for merchandise.  If they do not get written confirmation, then the refund must be automatically given to the buyer.

252. Not only have Plaintiffs and consumers alike not received refunds for Defendants' excessive delays, it is currently Anovos' policy to deny any refunds, in violation of the 15 U.S.C. 57a.

253. Further, Defendants' conduct constitutes unlawful business practices because charging unearned amounts is an unlawful activity, in essence—theft of Plaintiffs and the Class' funds. Here, Disney facilitated the theft of funds because it was aware of customers' complaints, promised to customers to take action regarding their refunds and escalate the issue with Anovos.

254. Plaintiffs reserve the right to allege other violations of law, which constitute additional unlawful business practices or acts, as such conduct is ongoing and continues to this date.

**B. "Unfair" Prong**

255. Defendants actions and representations constitute an "unfair" business act or practice under Business & Professions Code § 17200, *et seq.* in that Defendants' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. Without limitation, it is an unfair business act or practice for Defendants to knowingly or negligently represent to the consuming public that it offers Star Wars, and other products, then secure payment, only to not provide such products, nor return payment to the customers.

256. Disney then misleadingly suggests to consumers that it can help and assist them with their Anovos issues only to ultimately ignore the consumers.

257.  Such conduct by Defendants is "unfair" because it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers in that consumers are led to believe that Defendants will actually provide the products they offer.

258.  Plaintiffs could not have reasonably avoided the injury he suffered. Indeed, for years, Anovos announced it would fulfill Plaintiff's pre-order shipments.

259.  Plaintiffs reserve the right to allege further conduct that constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date, as Defendants continue to mislead the public.

### C. "Fraudulent" Prong

260.  Defendants' claims and statements were false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200, *et seq*. Whether through conduct, in writing or orally, Defendants engaged in fraudulent acts and business practices by knowingly or negligently representing to the public, that Defendants' would be produced by certain dates, year after year.

261.  Plaintiffs reserve the right to allege further conduct that constitutes other fraudulent business acts or practices. Such conduct is ongoing and continues to this date.

262.  Defendants' fraudulent, unlawful and unfair business practices, as described above, present an ongoing threat to consumers because consumers will continue to be misled by the products and services Defendants offer on its website and through social media.

263.  Plaintiffs have suffered injury in fact and has lost money as a result of Defendants' unfair competition, as more fully set forth herein. Plaintiffs have been injured as he relied on Defendants' misrepresentations.

264.  Defendant, through its acts of unfair competition, has unfairly acquired several thousands of dollars from Plaintiffs and consumers alike. Plaintiffs

1   request that this Court restore these monies for Defendants' violations of the

2   California Business & Professions Code§ 17200, *et seq.*, as discussed herein.

3   265. Plaintiffs further seek an order requiring Defendants to make full restitution

4   of all monies wrongfully obtained and disgorge all ill-gotten revenues and/or

5   profits, together with interest thereupon.

6   **D. "Unfair, Deceptive, Untrue or Misleading Advertisement" Prong**

7   266. Defendants' advertising is unfair, deceptive, untrue, and/or misleading within

8   the meaning of Bus. & Prof. Code §§ 17200, *et seq.*, in that consumers were

9   led to believe that Defendants would provide the products ordered and paid

10   for. Additionally, based on Disney's' logos and positions, consumers were

11   deceived into believing Disney would ensure and assist in the delivery of such

12   products.

13   267. Plaintiffs, reasonable consumers, and the public were likely to be, and in fact

14   were, deceived and misled by Defendants' advertising throughout social

15   media, national and international conventions, and their own websites.

16   268. As a direct and proximate result of Defendants' unlawful, unfair, and

17   fraudulent conduct described herein, Defendants received and continue to

18   receive an unfair competitive advantage and unearned commercial benefits at

19   the expense of its competitors and the public, who unwittingly provided

20   money to Defendants based on Defendants' misleading representations.

21   269. Plaintiffs and the Class suffered substantial damages in that potentially

22   millions of dollars were taken from Plaintiffs and the Class as a result of

23   Defendants' false representations.

24   270. Such acts and omissions by Defendants are unlawful and/or unfair and/or

25   fraudulent, and constitute multiple violations of California's UCL. As such,

26   Plaintiff and the Class Members seek monetary damages and the entry of

27   injunctive relief against Anovos, enjoining it from marketing to and obtaining

28   full payments for pre-order items, that it will never deliver, as well as

1   Disney's continued licensing of products it knows are not being delivered to
2   consumers.

3   271.   Plaintiffs reserve the right to identify additional violations by Defendants as
4   may be established through discovery.

**Fourth Cause of Action**

**Florida's Deceptive and Unfair Trade Practices Act,**

**Fla. Stat. § 501.201, *et seq.***

**(Alonso v. Defendants)**

9   272.   As Defendants' conduct is demonstrative of their violations of the California
10  UCL, Mr. Alonso re-alleges and incorporates the preceding paragraphs as
11  though fully stated herein to show Defendants violated Fla. Stat. § 501.201, *et*
12  *seq.* as follows:

13  273.   Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") as codified
14  at Fla. St. § 501.204 *et seq.*, declares unlawful any "Unfair methods of
15  competition, unconscionable acts or practices, and unfair or deceptive acts or
16  practices in the conduct of any trade or commerce."

17  274.   At all times material, the Mr. Alonso was a "consumer" as that term is defined
18  by Florida Statutes, the Florida Deceptive and Unfair Trade Practices (Act)
19  ("FDUTPA") (§§ 501.201-501.213.)

20  275.   Defendants at all times material to this Complaint, acting alone or in convert
21  with others, provided goods or services within the definition of Section
22  501.203(8), Florida Statues and solicited consumers within the definition of
23  Section 501.203(7), Florida Statutes.

24  276.   At all times material, Defendants engaged in "trade or commerce," as defined
25  by Florida Statute § 501.203(8), by advertising, soliciting, providing, offering,
26  or distributing, whether by sale, rental, or otherwise, of any good or service,
27  or any property, whether tangible or intangible, or any other article,

28

1   commodity, or thing of value, wherever situated, including the conduct of any

2   trade or commerce, however denominated.

3   277. Defendants engaged in unconscionable acts or practices, and/or unfair or

4   deceptive acts or practiced in the conduct of any trade or commerce.

5   278. Mr. Alonso and consumers alike were misled as Defendants continue to

6   ignore consumer complaints, market pre-order items, sell them for full price

7   plus shipping, all with the intent of not delivering such items.

8   279. At all times Mr. Alonso acted reasonably in the circumstances considering

9   Defendants were publicly announcing their ability and intentions to delivery

10   the backed orders, postponing the dates until after it became too late for

11   consumers to even dispute the charges with their banks.

12   280. Defendants' representations as set forth above are false and misleading and

13   likely to mislead consumers acting reasonably, and/or consumers within the

14   State of Florida were misled by Defendants' misrepresentations in violation of

15   Section 501.204 of FDUTPA.

16   281. Defendants' material misrepresentations and material omissions were

17   unconscionable, unfair, deceptive, and did in fact cause injury to reasonable

18   relying consumers.

19   282. Because of Defendants' unfair and deceptive trade practices, Defendants have

20   caused damage to consumers in the State of Florida. In addition, Defendants

21   have been unjustly enriched because of their deceptive acts or practices.

22   283. Pursuant to Fla. Stat. § 501.211 because Plaintiffs suffered losses as a result of

23   violations of this part, they are entitled to recover actual damages, plus

24   attorney's fees and courts costs as provided in Fla. Stat. § 501.2105 from

25   Defendants.

26   284. Unless Defendants are permanently enjoined from engaging further in the acts

27   and practices complained of herein, the continued activities of Defendants

28

1    will result in irreparable injury to the public and consumers in the State of
2    Florida for which there is no adequate remedy at law.

3    285.  Sections 501.207, 501.2105, 501.2075, and 501.2077, Florida Statutes,
4          authorize this Court to grant such relief as this Court finds necessary to
5          redress injury to consumers resulting from Defendants' violations of
6          FDUTPA, including injunctive relief, the refund of monies paid, the
7          disgorgement of ill-gotten monies, attorneys' fees, and civil penalties.

8                                **Fifth Cause of Action**
9                        **N.Y. General Business Law §§ 349, 350**
10                              **(Joseph v. Anovos)**

11   286.  As Anovos' conduct is demonstrative of its violations of the California UCL
12         and Florida FDUTPA, Mr. Joseph re-alleges and incorporates the preceding
13         paragraphs as though fully stated herein to show Anvoos violated New York
14         General Business Law as follows:

15   287.  New York General Business Law Section 349 declares unlawful "[d]eceptive
16         acts or practices in the conduct of any business, trade, or commerce or in the
17         furnishing of any service in this state. . ."

18   288.  Similarly, New York General Business Law Section 350 prohibits "[f]alse
19         advertising in the conduct of any business, trade or commerce or in the
20         furnishing of any service in [the State of New York]."

21   289.  Anovos is, and at all times relevant herein was, engaged in consumer-related
22         activities that affected consumers at large—marketing on its websites, social
23         media, and in international conventions the sale of products in New York
24         State that would never be produced.

25   290.  Anovos utilized tactics that were deceptive and misleading in material
26         respects, exposed the public to sales tactics through various mediums that
27         were false and misleading in relevant respects and led to Mr. Joseph's injury
28         as a result.

291. The conduct of Anovos alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of New York General Business Law Section 349 and "false advertising" under Section 350, and as such, Mr. Joseph and the Class Members seek monetary damages and the entry of injunctive relief against Anovos.

292. Anovos misleadingly and deceptively present its products along with unattainable shipping dates to consumers.

293. Anovos' improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Mr. Joseph and the Class to purchase and pay full price plus often times shipping for Anovos' products when they otherwise would not have.

294. Anovos made untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

295. Mr. Joseph and the Classes were damaged thereby.

296. As a result of Anovos' continued, "unlawful" deceptive acts and practices, Plaintiffs and Class Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Anovos' unlawful conduct, interest, and attorneys' fees and costs.

**Sixth Cause of Action**

**Washington's Unfair Business Practices Act**

**RCW § 19.86, *et seq.***

**(Jones v. Anovos)**

297. As Anovos' conduct is demonstrative of its violations of the California UCL, Florida FDUTPA, and New York's General Business Law, Mr. Jones re-alleges and incorporates the preceding paragraphs as though fully stated herein to show Anovos engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.010, *et seq*.

298. The Washington Consumer Protection Act, RCW 19.86 (the "CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of commerce."

299. Anovos has engaged in unfair and deceptive acts and practices occurring in trade or commerce in violation of the CPA with respect to Mr. Jones including, but not limited to the following:

- Requiring consumers pay full price for pre-order items that were not shipped and monies not refunded;

- Failing to provide refunds after excessive delays in shipping deadlines in violation of 15 U.S.C. 57a;

- Misleading or otherwise informing Mr. Jones and consumers alike about the production of items, and delivery dates;

- Continuing to market and solicit consumers' funds for products that cannot be delivered; and

- Treating Mr. Jones and consumers alike unfairly and without regard to obligations of good faith.

300. Mr. Jones alleges that Anovos' misconduct, as alleged, herein, gave, and has given Anovos an unfair competitive advantage over its competitors.

301. Mr. Jones alleges that as a direct and proximate result of the aforementioned acts, Anovos has prospered and benefitted from Mr. Jones—essentially stealing hundreds of dollars under the guise that pre-order items would be delivered timely.

302. Mr. Jones and other Class Members are consumers or persons aggrieved by Anovos' misconduct within the meaning of the above statutes.

303. To the extent applicable, Anovos knew, intended, or should have known that its fraudulent and deceptive acts, omissions, or concealment would induce reliance and that reliance can be presumed under the circumstances.

304. As a direct and proximate result of Anovos' unfair methods of competition and unfair or deceptive acts or practices, Mr. Jones and other Class Members have suffered damages in an amount – an ascertainable loss – to be proven at trial.

**Seventh Cause of Action**

**Violation of the California Consumers Legal Remedies Act**

**Cal. Civ. Code Section 1750, *et seq*.**

**(Fernandes/Catalano v. Anovos)**

305. Plaintiffs (for the purposes of this section only, Plaintiffs mean Mr. Catalano and Mr. Fernandes) repeat, re-allege and incorporate herein by reference the above allegations as if fully stated herein.

306. This claim is asserted on a statewide California subclass basis against each Defendant.

307. California Civil Code section 1750, *et seq.*, titled the Consumers Legal Remedies Act ("CLRA"), provides a list of "unfair or deceptive" practices in a "transaction" relating to the sale of "goods" or "services" to a "consumer." The Legislature's intent in promulgating the CLRA is expressed in Civil Code section 1760, which provides, *inter alia*, that its terms are to be:

> "Construed liberally and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."

308. Defendants, Plaintiffs, and the Class members are each "person[s]" as defined pursuant to Civil Code section 1761(c).

309. Defendants' products constitute "goods" as defined pursuant to Civil Code Section 1761(a).

310. Plaintiffs, and the Class members, are each "consumer[s]" as defined pursuant to Civil Code section 1761(d).

311. Plaintiffs and the Class member's attempted procurement of Anovos/Disney's licensed products constituted a "Transaction" as defined by Civil Code section 1761(e).

312. Civil Code section 1770(a)(9) states that:

> (a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:
> (9) Advertising goods or services with intent not to sell them as advertised.

313. Civil Code section 1770(a)(10) states that:

> (a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:
> (10) Advertising goods or services with intent not to supply reasonably expectable demand, unless the advertisement discloses a limitation of quantity.

314. Defendants violated Civil Code section 1770(a)(9) and (10) by representing, online, that certain goods would be delivered at a certain time.

315. Defendants never intended to deliver such goods, further evidenced by the fact that to date Defendants have not delivered goods ordered over three years ago, in violation of Civil Code section 1770(a)(9) and (10).

316. Through their purchase confirmations provided to consumers, Defendants guaranteed the production of shipment of goods. All the while Defendants continuously stalled at producing said goods.

317. On information and belief, Defendants' violations of the CLRA set forth herein were done with awareness of the fact that the conduct alleged was

1   wrongful and was motivated solely for Defendants' self-interest, monetary

2   gain, and increased profit.

3   318. On information and belief, Defendants committed these acts knowing the

4   harm that would result to Plaintiffs and the Class, and Defendants engaged in

5   such unfair and deceptive conduct notwithstanding such knowledge. In fact,

6   Defendants continue to engage in such conduct despite the complaints

7   brought to their attention.

8   319. Plaintiffs suffered an "injury in fact" because Plaintiff's money was taken by

9   Defendants as a result of Defendants' false representations set forth on

10  Defendants' advertisements and continued reassurances that products would

11  ultimately be delivered.

12  320. As a direct and proximate result of Defendants' violations of the CLRA,

13  Plaintiffs and the Class are entitled to and seek injunctive relief prohibiting

14  such conduct in the future.

**Eighth Cause of Action**

**Negligent Misrepresentation**

**(Plaintiffs v. Defendants)**

18  321. Plaintiffs repeat, re-allege and incorporate herein by reference the above

19  allegations as if fully stated herein.

20  322. Defendants represented to the public, including Plaintiffs, that their products

21  would be delivered. However, as delivery dates for pre-order products

22  approached, Defendants would continuously delay and extend shipment dates,

23  and never delivering the paid for products.

24  323. Defendants made the representations herein alleged, negligently, and should

25  have known these representations were untrue, and Defendants lacked a

26  reasonable basis for believing the representations to be true at the time such

27  representations were made to Plaintiff, and others similarly situated.

28

324. Additionally, due to Ms. Santin's representations to consumers apologizing for consumers' experiences with Anovos, that they do "not live up to [Walt Disney Company's] standards," as well as Disney's prominent marketing and presence with Anovos, it is responsible for the damage consumers suffered.

325. Further, since at least 2016, Disney was aware of Anovos' fraudulent conduct, yet did nothing to prevent its continuance. Instead, Disney reaped the benefits of Anovos' conduct.

326. By making these representations, Defendants intended to induce Plaintiffs and others to pay thousands of dollars for products that would never be delivered to them.

327. Through its website, press conferences, and social media posts, Plaintiffs saw, believed, and reasonably relied upon Defendants' representations and, in such reliance, continued to purchase products from Anovos and patiently wait for the shipments.

328. Plaintiffs were harmed in that Plaintiffs actually had to pay out of pocket for or items they never received.

329. Plaintiffs' reliance on Defendants' representation of products to be delivered and estimated shipment dates were a substantial factor in causing Plaintiffs' harm.

330. Plaintiffs would not have purchased Defendants' products had they known Defendants were incapable or unwilling to deliver them.

### Ninth Cause of Action

### Intentional Misrepresentation

### (Plaintiffs v. Anovos)

331. Plaintiffs repeat, re-allege and incorporate herein by reference the above allegations as if fully stated herein.

332. Anovos represented to the public, including Plaintiffs, that its products would be delivered to consumers. However, when shipment dates approached,

1   Anovos continuously extended the shipment dates, yet refused to provide

2   refunds in numerous instances.

3   333. Anovos intentionally made the representations regarding the delivery of its

4   products, all the while, Anovos knew that these representations were false; or

5   Anovos made the representations recklessly and without regard for their truth.

6   334. By making these representations, Anovos intended that Plaintiffs and other

7   consumers would rely on those statements in deciding whether or not to buy

8   Anovos' products.

9   335. Plaintiffs were harmed in that Plaintiffs actually had to pay thousands of

10   dollars, and continue to be without the use and enjoyment of the products

11   promised.

12   336. Further, Plaintiffs relied on Disney's affiliation and support of Anovos, and as

13   the direct result of Disney's encouragement of public to purchase Anovos

14   products, Plaintiffs relied on Disney's and Anovos' representations.

15   337. Plaintiffs' reliance on Anovos' representation of the products being delivered

16   and estimated shipment dates was a substantial factor in causing Plaintiff's

17   harm.

18   338. Plaintiffs would not have purchased Anovos' products had they known

19   Anovos were incapable or unwilling to deliver them.

20   339. By engaging in the acts described above, Anovos is guilty of malice,

21   oppression, and fraud, and Plaintiffs and the Class are therefore entitled to

22   recover exemplary or punitive damages.

23   **Prayer For Relief**

24   WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs

25   and the putative Class members the following relief against Defendants:

26   • This Action be certified as a class action;

27   • Plaintiffs be appointed as the Class Representatives;

28   • Plaintiffs' attorneys be appointed as Class counsel;

Plaintiffs further pray for judgment against Defendants as follows:

**First Cause of Action**

**Fraud**

**(Plaintiffs v. Anovos)**

- An award of compensatory, special, general, and punitive damages according to proof against Anovos;
- An award of reasonable attorney's fees and costs;
- An award of pre- and post-judgment interest; and
- Any other relief the Court may deem just and proper.

**Second Cause of Action**

**Breach of Contract**

**(Plaintiffs v. Anovos)**

- An award of compensatory, special, and general damages according to proof against Anovos;
- An award of reasonable attorney's fees and costs;
- An award of pre- and post-judgment interest;
- Any other relief the Court may deem just and proper.

**Third Cause of Action**

**Unfair Competitions Law Under Cal. Bus. & Prof. Code § 17200**

**(Fernandes/Catalano v. Defendants)**

- An award of compensatory, special, general, and punitive damages according to proof against all Defendants;
- An award of reasonable attorney's fees and costs;
- An award of pre- and post-judgment interest; and
- Any other relief the Court may deem just and proper.

///

///

**Fourth Cause of Action**

**Florida's Deceptive and Unfair Trade Practices Act,**

**Fla. Stat. § 501.201, *et seq.***

**(Alonso v. Defendants)**

- An award of actual damages pursuant to Fla. Stat. § 501.207(c);
- An award of reasonable attorneys' fees and costs pursuant to Fla. Stat. § 501.2105;
- Injunctive relief and declaratory judgment pursuant to Flaw. Sta. § 501.207(a) & (b); and
- Any other relief the Court may deem just and proper.

**Fifth Cause of Action**

**N.Y. General Business Law §§ 349, 350**

**(Joseph v. Anovos)**

- An award of actual damages;
- An award of punitive damages as the Court may allow pursuant to N.Y. Gen. Bus. Law §§ 349(h), 350-e(3);
- An award of reasonable attorneys' fees and costs pursuant to N.Y. Gen. Bus. Law §§ 349(h), 350-e(3); and
- Any other relief the Court may deem just and proper.

**Sixth Cause of Action**

**Washington's Unfair Business Practices Act**

**RCW § 19.86, *et seq.***

**(Jones v. Anovos)**

- An award of compensatory, special, and general damages according to proof against Defendant;
- An award of pre- and post-judgment interest; and
- Any other relief the Court may deem just and proper.

**Seventh Cause of Action**

**California Consumers Legal Remedies Act**

**Cal. Civ. Code Section 1750, *et seq*.**

**(Fernandes/Catalano v. Anovos)**

- Injunctive relief pursuant to Cal. Civ. Code § 1780(a);
- An award of costs and attorney's fees pursuant to Cal. Civ. Code § 1780(e); and
- Any and all relief that this Court deems necessary or appropriate.

**Eighth Cause of Action**

**Negligent Misrepresentation**

- Actual damages, injunctive relief, restitution, and punitive damages.

**Ninth Cause of Action**

**Intentional Misrepresentation**

- Actual damages, injunctive relief, restitution, and punitive damages.

**Jury Demand**

340.  Pursuant to the Seventh Amendment to the Constitution of the United States of America,  Plaintiffs are entitled to, and demand, a trial by jury.


Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

November 15, 2019                    By: *s/Abbas Kazerounian*
                                     Abbas Kazerounian, Esq.
                                     ak@kazlg.com
                                     *Attorneys for Plaintiff*


Kevin R. Duck, Esq. (SBN: 23043)
**DUCK LAW FIRM, L.L.C.**
5040 Ambassador Caffery Parkway, Suite 200

1  Lafayette, LA 70508
   Telephone: (337) 406-1144
2  Fax: (337) 406-1050

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28