**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
245 Fischer Ave., Ste. D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**KAZEROUNI LAW GROUP, APC**
Yana A. Hart, Esq. (SBN: 306499)
yana@kazlg.com
2221 Camino Del Rio, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile:  (619) 297-1022

*Attorneys for Plaintiffs*
*Arthur Catalano, Matthew Fernandes,*
*Andre Joseph, Alexander Alonso, and Randolph Jones*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARTHUR CATALANO, MATTHEW FERNANDES, ANDRE JOSEPH, ALEXANDER ALONSO, and RANDOLPH JONES, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ANOVOS PRODUCTIONS, LLC; and DISNEY LUCAS FILM, LTD.,<br><br>Defendants. | Case No.: 2:19-cv- 04821-MWF (KSx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date:   January 27, 2020<br>Time:  10:00a.m.<br>Ctrm:  5A<br>Judge: Hon. Michael Fitzgerald |

KAZEROUNI LAW GROUP, APC
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

## Table of Contents

I. Introduction…………………………………………………………………………1

II. Statement of Facts……………………………………………………………..….2

    A. Plaintiff Arthur Catalano…………………………………………………4

    B. Plaintiff Matthew Fernandes……………………………………..……4

    C. Plaintiff Andre Joseph……………………………………………………4

    D. Plaintiff Alexander Alonso……………………………………………..5

    E. Randolph Jones…………………………………………………………..5

III. Legal Standard……………………………………………………………………5

IV. Argument………………………………………………………………………….6

    A. Plaintiffs Sufficiently Allege Causes of Action for Fraud and Intentional Misrepresentation by Anovos. ……………………………………………6

        1. Plaintiffs Pled Sufficient Facts Pursuant to Rule 9(b) For Claims Based In Fraud. …………………………………………………………6

        2. Anovos' "Estimated" Shipping Dates Constitute Misrepresentations. ……………………………………………………...8

        3. Plaintiffs Justifiably Relied on Anovos' Misrepresentations………11

    B. Plaintiffs Sufficiently Pled Facts to Establish Negligent Misrepresentation Against Defendants...…………………………………………………...13

    C. Plaintiffs Adequately Allege Breach of Contract. …………………….14

    D. Mr. Catalano and Mr. Fernandes Sufficiently Allege CLRA Claims Against Anovos. ……………………………………………………….18

    E. Plaintiffs' Claims Against Lucasfilm Should Not Be Dismissed………..19

    F. Plaintiffs Sufficiently Pled Agency Because Lucasfilm's Actions Evidenced a Grant of Apparent Authority and Ratified Anovos' Conduct……………………………………………………………….23

V. Conclusion. …………………………………………………………………….25

KAZEROUNI LAW GROUP, APC
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

1
2

**Cases**

3
4

*Alliance Mortgage Co. v. Rothwell*,
10 Cal, 4th 1226, .........................................................................................11

5
6

*Aryeh v. Canon Business Solutions, Inc.*,
55 Cal. 4th 1185, 1196 (2013) .......................................................................20

7

*A-Z Bus Sales, Inc. v. City of Burbank*,
Case No. B244867, 2014 Cal. App. Unpub. LEXIS 1765, at *10 (Mar. 13, 2014).16

8
9
10

*Baas v. Dollar Tree Stores, Inc.*,
2007 U.S. Dist. LEXIS 65979, 2007 WL 2462150 at *2
(N.D. Cal. August 29, 2007) ..........................................................................7

11

*Badie v. Bank of America*,
67 Cal. App. 4th 779, 795 (1998) ...................................................................15

12
13

*Bardin v. Daimlerchrysler Corp.*,
136 Cal. App. 4th 1255, 1260-1261 (2006) .....................................................20

14
15

*Bauman v. Bliese*,
326 B.R. 843, 845 (Bankr. M.D. Fla. 2005) ....................................................9

16
17

*C. A. Hooper & Co. v. Freeman, Smith & Camp Co.*,
1 Cal.App.2d 122, 124, 36 P.2d 146 (1934) ....................................................17

18
19

*Cadlo v. Owens-Illinois, Inc.*,
125 Cal. App. 4ᵗʰ 513, 519 (1st Dist. 2014) ....................................................8

20

*Chapman v. Skype Inc.*,
220 Cal. App. 4th 217, 230-31 (2nd Dist. 2013) ..............................................8

21
22

*Cooper v. Pickett*,
137 F.3d 616, 627 (9th Cir. 1997);...................................................................6

23
24

*Credit Suisse First Boston Corp. v. Grunwald*,
400 F.3d 1119, 1126 fn. 8 (9th Cir. 2005)........................................................16

25
26

*Dalton v. Anovos et al*,
19-4821-MWF-KS, *18-19 (C.D. Cal. Sept. 27, 2019). ..................................7

27

*Daniel v. Ford Motor Co.*,
806 F.3d 1217, 1225 (9th Cir. 2015) ...............................................................12

28

KAZEROUNI LAW GROUP, APC
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

*Digerati Holdings, LLC v. Young Money Entm't, LLC*,
194 Cal. App. 4th 873, 885 (2011) ..........................................................15

*Donohue v. Apple, Inc.*,
871 F. Supp. 2d 913, 928 (N.D. Cal. 2012)...............................................20

*Eminence Capital, L.L.C. v. Aspeon, Inc.*,
316 F.3d 1048, 1052 (9th Cir. 2003)...........................................................6

*Emrich v. Touche Ross & Co.*,
846 F.2d 1190, 1198 (9th Cir. 1998) ...........................................................6

*Fitch v. Le Beau*,
1 Cal. App. 3d 320, 324-25 (1969).............................................................21

*Foley v. Interactive Data Corp.*,
47 Cal. 3d 654, 684 (1988) ........................................................................15

*Furla v. Jon Douglas Co.*,
65 Cal. App. 4th 1069, 1080 (1998) ..........................................................10

*Gilligan v. Jamco Dev. Corp.*,
108 F.3d 246, 249 (9ᵗʰ Cir. 1997) ...............................................................5

*Gonsalves v. Roma Furniture Co.*,
107 Misc. 2d 186, 188 (Civ. Ct. 1980) ......................................................17

*Hawaiian Paradise Park Corp. v. Friendly Broad. Co.*,
414 F.2d 750, 756 (9th Cir. 1969) ............................................................23

*Henderson v. United Student Aid Funds, Inc.*,
918 F.3d  1068, 1073-1074 (9th Cir. 2019).........................................24, 25

*Henry v. Sharma*,
154 Cal. App. 3d 665, 669 (2nd Dist. Cal. 1984)......................................15

*Hougland v. Roth Blum Packing Co.*
99 Cal.App. 631, 635, 279 P. 159 (1929)..................................................17

*In re Jamster Mktg. Litig.*,
2009 U.S. Dist. LEXIS 43592 (S.D. Cal. May 22, 2009) ........................23

*Inland Mediation Bd. v. City of Pomona*,
158 F. Supp. 2d 1120, 1140 (C.D. Cal. 2001) ..........................................23

*Inwood Laboratories, Inc. v. Ives Lab., Inc.*,
456 U.S. 844, 853-54 (1982) .....................................................................22

KAZEROUNI LAW GROUP, APC
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

*Jones & Laughlin Steel Co. v. Abner Doble Co.*,
162 Cal. 497, 504 (1912) ............................................................................ 15

*Jones v. ConAgra Foods, Inc.*,
912 F. Supp. 2d 889, 902 (N.D. Cal. 2012) ............................................... 19

*Kasel v. Remington Arms Co.*,
24 Cal.App.3d 711, 725 (1972) .................................................................. 23

*Kashmiri v. Regents of University of California*,
156 Cal. App. 4th 809, 844-45 (2007) ....................................................... 17

*Kealoha v. E.I. du Pont de Numerours & Co.*,
82 F.3d 894, 903 (9th Cir. 1996) ............................................................... 21

*Kinsman v. Unocal Corp.*,
37 Cal. 4th 659, 673-74 (2005) ................................................................. 21

*Lazar v. Superior Court*,
12 Cal. 4th 631, 638 (1996) ......................................................................... 8

*Lushe v. Verengo Inc.*,
2015 U.S. Dist. LEXIS 16961,*10-17 (C.D. Cal. Feb. 2015) ..................... 24

*Martinez v. Decorators Warehouse, Inc.*
Cuyahoga App. No. 46873, 1983 Ohio App. LEXIS 12917 (Dec. 15, 1983) ..........17

*Mavrix Photographs, LLC v. LiveJournal, Inc.*,
873 F.3d 1045 (9th Cir. 2017) .............................................................. 24, 25

*Mini Maid Services Co. v. Maid Brigade Systems, Inc.*,
967 F.2d 1516, 1521 (11th Cir. 1992) ....................................................... 22

*Moore v. Kayport Package EXP., Inc.*,
885 F.2d 531, 540 (9th Cir. 1989) ............................................................... 7

*Morongo Band of Mission Indians v. Rose*,
893 F.2d 1074, 1079 (9th Cir. 1990) ......................................................... 25

*Motohouse Intent., LLC v. PPG Industries, Inc.*,
2010 WL 476652, at *3 (S.D. Cal. Feb 4, 2010) ......................................... 8

*Newcal Industries, Inc. v. Ikon Office Solution*,
513 F.3d 1038, 1056 (9th Cir. 2008) ......................................................... 20

*Nordberg v. Trilegiant Corporation a/k/a TRL Group*,
445 F. Supp. 2d 1082, 1097 (N.D. Cal. 2006) ........................................... 18

KAZEROUNI LAW GROUP, APC
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

*Peloza v. Capistrano Unified Sch. Dist.*,
37 F.3d 517, 521 (9th Cir. 1994) ................................................................6

*Petersen v. Allstate Indem. Co.*,
281 F.R.D. 413, 417-18 (C.D. Cal. 2012) ..............................................14

*Podolsky v. First Healthcare Corp.*
(1996) 50 Cal. App. 4th 632 ....................................................................20

*Resolution Trust Corp. v. Rossmoor Corp.*,
34 Cal.App.4th 93, 104 (1995) ..................................................................21

*Sater v. Chrysler Grp. LLC*,
No. EDCV 14-00-700-VAP (DTBx)........................................................14

*Scheuer v. Rhodes*,
416 U.S. 232, 236 (1974) ............................................................................6

*Schlagal v. Learning Tree Int'l.*,
1998 U.S. Dist. LEXIS 20306, 1998 WL 1144581 at *8
(C.D. Cal. Dec 23, 1998) ............................................................................7

*Small v. Fritz, Inc.*,
30 Cal. 4th 167, 173 (2003) ........................................................................8

*Spinks v. Clark*,
147 Cal. 439, 444 (1905) ..........................................................................11

*State Farm Fire & Casualty Co. v. Superior Court*
45 Cal. App. 4th 1093 (1996) ..................................................................20

*Sun Microsystems, Inc. v. Microsoft Corp.*,
81 F. Supp. 2d 1026, 1030 (N.D. Cal. Jan. 25, 2000) ...........................15

*Tenzer v. Superscope, Inc.*
39 Cal. 3d 18, 30 (1985)..............................................................................8

*Thrifty Payless, Inc. v. The Americana at Brand, LLC*,
218 Cal.App.4th 1230, 1238 (2013) ........................................................10

*Thrifty v. Payless, Inc. v. The Americana Brand, LLC*,
218 Cal. App. 4th 1230..............................................................................9

*Ucello v. Laudenslayer*,
44 Cal.App.3d 504(1975) ..........................................................................21

KAZEROUNI LAW GROUP, APC
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

*UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*,
2015 WL 12746208, at *15 (C.D. Cal. Oct. 30, 2015) .............................................8

*United States v. City of Redwood City*,
640 F.2d 963, 966 (9th Cir. 1981) ........................................5

*Veera v. Banana Republic, LLC*,
6 Cal. App. 5th 907, 921 (2016) ...........................................12

*Warren v. Fox Family Worldwide, Inc.*,
328 F.3d 1136, 1139 (9th Cir. 2003) ........................................6

*Wood v. Ostrander*,
 879 F.2d 583, 590 (9th Cir. 1989) ..........................................22

*Yucesoy v. Uber Techs., Inc.*,
No. 15-cv-00262-EMC, 2016 U.S. Dist. LEXIS 15867,
(N.D. Cal. Feb. 9, 2016) ...................................................19

*Zimmerman v. City of Oakland*,
255 F.3d 734, 737 (9th Cir. 2001) ..........................................6

**Statutes**

16 C.F.R. § 435.2(a)(1). ....................................................12

16 C.F.R. § 435.2(b)(1) .....................................................12

Cal. Civ. Code § 1780 ......................................................18

Cal. Civ. Code § 1657 ......................................................15

Cal. Civ. Code §§ 1760 .....................................................18

**Treatises**

Rest. (2d) of Agency .......................................................23

*Witkin, Summary of California Law* (Ninth Edition),
Contracts § 792 at 715 (1998). .............................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**KAZEROUNI LAW GROUP, APC**
**2221 CAMINO DEL RIO SOUTH SUITE 101**
**SAN DIEGO, CA 92108**

## I.  INTRODUCTION

Plaintiffs Arthur Catalano, Matthew Fernandes, Andre Joseph, Alexander Alonso, and Randolph Jones (collectively "Plaintiffs") oppose Defendants Anovos Productions, LLC, ("Anovos") and Lucasfilm Ltd. LLC's (erroneously sued as "Disney Lucasfilm, Ltd.") ("Lucasfilm") (collectively "Defendants") Motion to Dismiss pursuant Fed. R. Civ. P. 12(b)(6) ("MTD").

The crux of Anovos' entire motion to dismiss is: so long as Anovos discloses that a delivery date is an "estimate," Anovos is immune from liability. Anovos would like this Court to adopt the notion that against all consumer expectations and common sense, by not delivering paid for products in the next century, Anovos cannot be liable for any of their ongoing misrepresentations and continued promises of deliveries. Lucasfilm argues that it can remain willfully blind to Anovos' fraud, and continue its marketing and licensing of Anovos' products, because it is merely a "licensor." Thus, Lucasfilm's argument is premised that it cannot be held directly or vicariously liable for Anovos' fraud despite its active promotion and endorsement of Anovos' pre-paid products that have not been delivered for years, continued licensing of its trademarks to Anovos despite numerous complaints, and its failure to warn of the knowing danger – that prepaid items will not be delivered to consumers.

Contrary to Defendants' arguments, Plaintiffs adequately and thoroughly allege that both Defendants are liable under various causes of actions for their joint and concerted actions, *joint* promotion of prepaid products, and Anovos' repetitive misrepresentations of the delivery dates through its website, blogs, articles, and email correspondences. Had Defendants warn the consumers that the prepaid items will not be shipped for four or more years, and anticipate postponing shipping dates indefinitely, no reasonable consumer would purchase Anovos' products. Plaintiffs sufficiently pled reliance on Anovos' promises to deliver and Anovos' failure to produce fully paid for goods. Lastly, due to Lucasfilm's role in the creation of

KAZEROUNI LAW GROUP, APC
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

danger and its active advertisement of Anovos' pre-paid items, it must assume a corresponding duty to protect the consumers who relied on Lucasfilm's involvement in working with Anovos. Plaintiffs Fernandes and Alonso and consumers alike would not have been in harms way but for Lucasfilm's concealment of Anovos' fraudulent activity, active endorsement and promotion of undeliverable items, and continued licensing of their trademarks to Anovos.

Anovos' indefinite delays with false assurances along the way cannot relieve both Defendants' of their liability, especially since both Defendants profited from Anovos' ongoing misrepresentations and licensing by continuing to sell or advertise Anovos' products after they were on notice of Anovos' repeated failure to deliver the prepaid products. Thus, Defendants' MTD should be denied in its entirety.

## II. STATEMENT OF FACTS

Lucasfilm exclusively licenses StarWars costumes and props to Anovos. [Dkt. 46, Plaintiffs' Third Amended Complaint ("TAC"), ¶ 25.] "In partnership with Lucasfilm Ltd., Anovos use[s] original film assets and digital scan technology to reproduce [ ] officially licensed costume replica[s]." *Id*. at ¶ 24. After acquiring Lucasfilm's license, it became clear that Anovos was unable to keep up with production orders. *See id*. at ¶¶ 23, 25, 62, 63.

Despite Anovos' inability and ineptitude to manufacture and deliver the pre-paid products, Lucasfilm continuously approved, encouraged and licensed Anovos to sell Lucasfilm's products. *Id*. at ¶¶ 148-71. As early as January 27, 2016, there was such a high volume of consumer complaints concerning Anovos' failure to deliver purchased items, that the Better Business Bureau ("BBB") sent Anovos multiple certified letters addressing such complaints. *Id.* at ¶¶ 63, 65. Indeed, Anovos maintains an "F" rating with BBB for its inability to fulfill various outstanding orders. *Id*. at ¶ 168.

On Lucasfilm's own website, starwars.com, it has advertised Anovos products with anticipated shipping dates. *Id*. at ¶¶ 148-50. In fact, Lucasfilm even

KAZOURONI LAW GROUP, APC
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

published an article raging about Anovos' costume. *Id.* Lucasfilm continues to promote the sales of Anovos' products—including the items that have not been manufactured or delivered for years—eluding that the high quality products would be in time for certain holidays, events, deadlines. TAC ¶¶149-150, 166. All Anovos StarWars products and promotional materials feature Lucasfilm's logo. *Id.* at ¶ 163. Naturally, Lucasfilm's conduct and active promotion of its licensee led consumers to believe that Anovos was a reputable company associated with Lucasfilm and they could bring their complaints against Anovos to Lucasfilm directly. *See id.* at ¶167. Lucasfilm reinforced this notion through its Licensing Coordinator, Jessica Santin, who generally responded to consumer complaints and assured consumers that while she was aware of the ongoing problems, she would "escalate" their complaints with Anovos, and the delays did not live up to Lucasfilm's standards. *Id.* at ¶¶ 153-56.  Despite knowing that numerous products have yet to be delivered to thousands of customers, Anovos' repeated failure to "live up to" Lucasfilm's standards, Lucasfilm continues to license its products to Anovos and continues to promote Anovos' "exclusive" prepaid products. *Id.* at ¶¶ 148-150, 171-173, 177.

## Summary of Anovos' Constant Misrepresentations.

Anovos' website is rife with misleading delivery dates. *Id.* at ¶¶ 43, 44, 47, 49, 50, 51, 52, 53. Plaintiffs' TAC exemplifies a customer's experience when generally purchasing a pre-order item from 2016. *Id.* at ¶ 43. Directly below an item, Anovos provided an estimated shipping of a three month period. *Id.* Delivery dates were also located below within the description of a product in bolded font. *Id.* On the same product's page, Anovos also inserted a link to an "updates page" for additional shipping dates and information as well as to blogs encouraging consumers purchase the items and worth the "estimated" wait. *Id.* at ¶ 43, 50. Consistently, Anovos provided shipping dates for its products all within a year of the purchase order. *Id.* at 44.

KAZEROUNI LAW GROUP, APC.
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

At the time of each of their own purchases, Plaintiffs were not aware of Anovos' tarnishing reputation and genuinely believed when they paid for an item, they would receive it. TAC at ¶¶ 69, 90, 104, 118, 125, 198. All named Plaintiffs made purchases online from anovos.com where, at the time of purchase, Anovos provided an estimated shipping date within the year of purchase. *Id*. at 51.

### A. Plaintiff Arthur Catalano

At the time of Plaintiff Arthur Catalano's $580.54 Starfleet Survival Suit Jacket purchase on September 4, 2016, Anovos' website stated the jacket would arrive the "first quarter of 2017" (January to March). *Id*. at ¶ 73. Following his purchase, as opposed to receiving the item, Catalano received at least seven different emails from Anovos, each pushing back the scheduled delivery date. *Id*. at ¶¶ 75-81. In the midst of these delays, Mr. Catalano made a second purchase on November 7, 2017. *Id*. at ¶ 86. To date, neither order has been fulfilled. *Id*. at ¶88.

### B. Plaintiff Matthew Fernandes

Matthew Fernandes purchased a "Star Wars: The Last Jedi First Order Stormtrooper Helmet Accessor" on January 17, 2018 for $225.00. *Id*. at ¶ 90. It was estimated by Anovos that the Helmet Accessory would be delivered in the Fall of 2018. *Id*. at ¶ 91. On or around September 17, 2018, Mr. Fernandes received the first of many email updates from Anovos postponing the delivery of his helmet. *Id*. at ¶ 96. Fernandes' order was pushed back to the Winter of 2018, then to March/early April 2019, then June 20, 2019. *Id*. at ¶¶ 96, 100. Due to the delays, in May 2019, Mr. Ferndandes contacted LucasFilm directly and corresponded with a "Jessica Santin" who explained (i) she was aware of the issues and (ii) would escalate them with Anovos. *Id*. at ¶¶ 102. Mr. Fernandes never received his order, which is still being sold online by Anovos. *Id*. at ¶ 103.

### C. Plaintiff Andre Joseph

On September 4, 2016, Mr. Joseph ordered a "Star Trek: Beyond – Starfleet Survival Suit jacket (PRE-ORDER) from Anovos for $559.35, scheduled to for

KAZOURONI LAW GROUP, APC
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

deliver in Summer 2017. *Id.* at ¶¶ 100, 106. However, on September 14, 2017, November 8, 2017, February 26, April 30, June 4, and August 21, 2018, Anovos sent emails delaying his order. *Id.* at ¶ 108, 109.

On November 11, 2017, Mr. Joseph made another online purchase for a "Star Trek Discovery Starfleet Phaser Pistol Interactive Prop Replica (Reservation – Wave 3) for $533.88. *Id.* at ¶ 112. Mr. Joseph has yet to receive either purchase from Anovos. *Id.* at ¶ 124.

### D. Plaintiff Alexander Alonso

Plaintiff Alexander Alonso purchased from Anovos on April 18, 2018, a "Star Wars Luke Skywalker Rebel Pilot Helmet Accessory" paying  $390.02 . *Id.* at ¶ 118. At the time of purchase, Anovos' estimated delivery was in Fall 2018. *Id.* at ¶ 119. Similarly, to other Plaintiffs' experiences, as the estimated date came near, Anovos extended the delivery date quarter by quarter. *Id.* at ¶ 121. Over a year after his purchase, Mr. Alonso has yet to receive the Helmet Accessory. *Id.* at ¶ 122.

### E. Randolph Jones

On July 28, 2018, Plaintiff Randolph Jones purchased a "Star Trek: The Final Frontier – captain Kirk Bomber Jacket (2018 Pre-Order – Wave 3) from Anovos for $350.00 on a payment plan to be completed in January 2019. *Id.* at ¶ 125, 130. Mr. Jones made this purchase based on the represented delivery date of March 2019. *Id.* at ¶ 129. Shortly after Mr. Jones completed his payments, Anovos delayed his order, while at the same time, advertising and selling the Star Trek: The Final Frontier – captain Kirk Bomber Jacket to ship within the next two to five months. *Id.* at ¶ 135.

### III.   LEGAL STANDARD

Motions to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6) are disfavored and granted only under extraordinary circumstances. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997); *see also United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). In reviewing the

KAZEROUNI LAW GROUP, APC.
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

1    sufficiency of the complaint, "[t]he issue is not whether a plaintiff will ultimately
2    prevail, but whether the claimant is entitled to offer evidence to support the
3    claims." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1998)
4    (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

5        Courts must accept all allegations of fact in the complaint as true and
6    construe them in the light most favorable to the plaintiffs. *Warren v. Fox Family*
7    *Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citing *Zimmerman v. City of*
8    *Oakland*, 255 F.3d 734, 737 (9th Cir. 2001)). The Court must also assume the
9    general allegations embrace the necessary, specific facts to support the claim.
10   *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994). Also,
11   "[d]ismissal with prejudice and without leave to amend is not appropriate unless it
12   is clear . . . that the complaint could not be saved by amendment." *Eminence*
13   *Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

14   **IV.   ARGUMENT**

15       Anovos' misguided reliance on "estimated" delivery dates cannot absolve it
16   from liability for its utter failure to supply pre-paid products for years. Defendants'
17   motion should be denied in its entirety because: (a) under any pleading standard,
18   Plaintiffs sufficiently put Anovos on notice of its misrepresentations; (b) Anovos'
19   delays in perpetuity constitute breach of contract; (c) Plaintiffs' CLRA and
20   negligence claims are well plead; and (d) Lucasfilm must remain accountable for its
21   creation of harm to consumers.

22   **A. Plaintiffs Sufficiently Allege Causes of Action for Fraud and Intentional**
23       **Misrepresentation by Anovos.**

24       **1.    Plaintiffs Pled Sufficient Facts Pursuant to Rule 9(b) For Claims**
25            **Based In Fraud.**

26       Despite a heightened standard, the Ninth Circuit has opined courts "cannot
27   make Rule 9(b) carry more weight than it was meant to bear." *Cooper v. Pickett*,
28   137 F.3d 616, 627 (9th Cir. 1997)*; see also Schlagal v. Learning Tree Int'l.,* 1998

KAZOURONI LAW GROUP, APC
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

U.S. Dist. LEXIS 20306, 1998 WL 1144581 at *8 (C.D. Cal. Dec 23, 1998) ("The Court must strike a careful balance between insistence on compliance with demanding pleading standards and ensuring that valid grievances survive.") Instead, Rule 9(b) particularity requirements "must be read in harmony with Fed. R. Civ. P. 8's requirement of a 'short and plain' statement of the claim." *Baas v. Dollar Tree Stores, Inc.*, 2007 U.S. Dist. LEXIS 65979, 2007 WL 2462150 at *2 (N.D. Cal. August 29, 2007). Thus, the particularity requirement is satisfied if the complaint identifies the circumstances constituting fraud so that a defendant can prepare an answer to the allegations. *Moore v. Kayport Package EXP., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

Anovos cannot plausibly maintain that it is unable to respond to the allegations of fraud asserted in the TAC simply because Plaintiffs did not allege *every* misrepresentation with respect to every product purchased with sufficient particularity. [1] Anovos claimed it would provide consumers with purchased products, and then deliver the pre-paid products. In fact, numerous items have not yet been manufactured. The TAC sets forth the precise content of Anovos' alleged typical and specific misrepresentations, listing the respective dates of the misrepresentations and content for each Plaintiff. TAC ¶¶ 43-56, 69-70, 73, 74, 75, 76-88, 90-91, 93, 95-96, 98-100, 102, 106, 107, 109-116, 119-122, 125-129, 132-135. Specifically, Plaintiffs provided product descriptions with attached photos exemplifying the various delivery misrepresentations on Anovos' website in 2016 TAC at ¶ 44, 47; they recited verbatim emails from Reggie, Ezra Parish and Anovos' customer supply liaisons regarding further delays and providing false assurances; they listed dates of the website misrepresentations at the time of

---

[1] In fact, this Court previously noted that Plaintiffs do not need to "plead **every misrepresentation,** but they must do more than use general language with one example" in listing the specific source of the misrepresentations, dates of the misrepresentations, and specific content of misrepresentations. *Dalton v. Anovos et al,* 19-4821-MWF-KS, *18-19 (C.D. Cal. Sept. 27, 2019).

KAZEROUNI LAW GROUP, APC.
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

purchases; they provided dates of the emailed false representations. *Id*. at ¶¶ 81, 83, 96, 107, 108); and they provided the dates and sources of email updates directing them to use the "delivery update pages." *Id*. at ¶¶ 70,73, 74, 75, 76, 77, 78, 79, 80, 81, 83, 87, 91, 96, 100, 106, 107, 108, 109, 110, 115,119, 120, 129, 133. Here, Anovos' representations were false at the time each misrepresentation was made because Anovos had no ability to comply with the orders, and, in fact, had numerous pre-order items outstanding back in 2016. *Id*. at 41, 62-63, 123, 201, 214, 227, 238. Thus, Plaintiffs sufficiently allege facts demonstrating Anovos' fraud.

### 2. Anovos' "Estimated" Shipping Dates Constitute Misrepresentations.

Under California law, elements for fraud are fundamentally the same for intentional misrepresentation: (1) a misrepresentation, (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) damages. *Chapman v. Skype Inc*., 220 Cal. App. 4th 217, 230-31 (2nd Dist. 2013); see *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996); *Cadlo v. Owens-Illinois, Inc*., 125 Cal. App. 4th 513, 519 (1st Dist. 2014); *see Small v. Fritz, Inc*., 30 Cal. 4th 167, 173 (2003).

Misrepresentation may be implied through one's promise to perform, while at the same time he or she lacks such intention to perform. *Lazar*, 12 Cal 4th at 638. Because another party's state of mind is often not expressly known to a plaintiff, the intent to defraud may often be established by inference. *See Tenzer v. Superscope, Inc*. 39 Cal. 3d 18, 30 (1985). Rarely does a plaintiff have direct evidence of a defendant's fraudulent intent, therefore circumstantial evidence such as insolvency, hasty repudiation of a promise, failure to attempt performance, or *continued assurances* after it is clear there was no performance. *Id*. Importantly, "continued assurances" in regard to non-performance raise an inference of fraud. *UMG Recordings, Inc. v. Global Eagle Entertainment, Inc*., 2015 WL 12746208, at *15 (C.D. Cal. Oct. 30, 2015); *see Motohouse Intent., LLC v. PPG Industries, Inc*., 2010 WL 476652, at *3 (S.D. Cal. Feb 4, 2010) ("Defendants' continued assurances that they would pay, Plaintiff's detrimental reliance, and Defendants'

KAZOURONI LAW GROUP, APC
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

success in securing sponsorship benefits . . . raise a reasonable expectation that discovery will reveal evidence sufficient to show that Defendants' representations were made with the intent to deceive Plaintiff and induce it to prove sponsorship benefits to Defendants. Plaintiff therefore sufficiently alleged intent to defraud").

As of January 27, 2016, Anovos could not maintain its estimated shipping dates to consumers. ¶ 63. The BBB sent Anovos two separate letters, January 27, 2016 and March of 2016, based on the high volume of consumer complaints for products not received. *Id.* Yet, Anovos continued to advertise its pre-paid products, estimating the delivery dates within several months from the date of purchase. All five named Plaintiffs have waited for their orders over a year from the dates of their purchases. TAC ¶¶ 70, 84, 90, 97, 105, 117, 125,134. The orders are yet to be fulfilled. Despite knowing that it has ongoing manufacturing and testing issues, Anovos currently advertises and accepts full payment for the very items Plaintiffs have yet to receive—still providing quickly approaching or already passed shipping estimates.[2] TAC ¶¶ 98, 135. Thus, Plaintiffs allegations establish the continuous practice and pattern of fraud, where Anovos is misrepresenting delivery dates despite knowing that thousands of items have yet to be fulfilled and the shipment of the items sold years ago has not yet started.

Fraud cases can be based on "estimates." In *Thrifty v. Payless, Inc. v. The Americana Brand, LLC*, 218 Cal. App. 4th 1230, 1242 the California Court of Appeal reversed a demurrer on fraud claims arising out of a commercial landlord's estimates of the plaintiff's "probable pro rate share" of costs. In reversing summary

---

[2] Any reference to pre-orders Anovos has miraculously fulfilled is inapposite to Anovos' intent at the time of consumers' purchase. Such subsequent fulfillment mirrors a Ponzi scheme whereby Anovos bases its ability/intent to fulfill fully paid for orders on future purchases. *See Bauman v. Bliese (In re McCarn's Allstate Fin., Inc.)*, 326 B.R. 843, 845 (Bankr. M.D. Fla. 2005) ("A 'Ponzi scheme' is a fraudulent investment arrangement in which returns to investors come from monies obtained from new investors rather than an underlying business enterprise.")

KAZEROUNI LAW GROUP, APC.
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

KAZOURONI LAW GROUP, APC
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

1   judgment, the court in *Furla v. Jon Douglas Co.*, 65 Cal. App. 4th 1069, 1080

2   (1998) held that "Defendants assume that if their prior estimates of square footage

3   are treated as approximations, defendants cannot be liable. . . . But according to the

4   [buyer's] theory of the case, the estimate of 5,500 square feet was not merely

5   inaccurate, it was *grossly* inaccurate, by more than 20 percent." *See also Thrifty*

6   *Payless, Inc. v. The Americana at Brand, LLC,* 218 Cal.App.4th 1230, 1238 (2013)

7   (reversing a demurrer because grossly inaccurate estimate can be sufficient to

8   establish fraud); *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 789

9   (2008) (holding same). As such Anovos cannot be shielded from its wildly

10  exaggerated delivery dates that cannot be met, simply by including the word

11  "estimate."[3] Further, Anovos cannot avoid liability indefinitely based on its

12  "estimates." A reasonable consumer expects the word "estimate" to mean scheduled

13  to arrive "around," "near" or within the "estimated" timeframe. Expecting

14  indefinite postponement of the delivery dates is not reasonable, and "unacceptable"

15  to even Anovos.[4]

16      Moreover, Anovos' continued assurances indefinitely delaying Plaintiffs

17  purchases, evidence Anovos' misrepresentations. *Id*. at ¶¶ 70-78, 90-100, 106-109,

18  118-121, and 129-133. The TAC alleges all five named Plaintiffs received emails

19  from Anovos postponing their original delivery dates. *Id*. Each postponed delivery

20  email falsely represented that the items will be delivered within a few months again

21  showing that Anovos had no intent of delivering the items timely.

22

23  [3] For clarification, Mr. Joseph's reference to the shipping calendar ¶ 113
    demonstrates Mr. Joseph's experience viewing Anovos' website and seeing every
24  single Star Trek pre-order item is scheduled to deliver within 6 months from their
    purchases. The shipping calendar fails to indicate that there may be a wait period
25  of more than three years for the items.

26  [4] Plaintiffs' Request to Incorporate by Reference, Exhibit A ("However, we realize
    that we have not effectively met the delivery expectations of our customers, and
27  we would like to sincerely apologize for any frustration this may have caused. . . .
    We too consider these delays unacceptable and hear your concerns.")
28

For instance, when Mr. Catalano made his initial purchase on September 4, 2016, Anovos represented the delivery date would be the first quarter of 2017 (January to March). TAC at ¶¶ 70, 73. Anovos reached out to Catalano via email (support@anovos.com) to delay the order to the Spring of 2017. *Id.* at ¶ 74. On June 16, 2017, Anovos indicated the order was "in production with the manufacturer" and provided a later delivery date. *Id.* at ¶ 76. Anovos delayed again to Fall 2017, then Winter 2017. *Id.* at ¶¶ 78, 79. On February 26, 2018, Anovos sent another email to assure Mr. Catalano, Anovos was simply "finalizing the integration of the hard pieces… [and] look[s] forward to being able to ship these superb jackets in Spring 2018. *Id.* at ¶ 80. On April 30, 2018, Reggie from Anovos emailed Mr. Catalano his order "need[s] to go through one final quality control check and then they will begin shipping." *Id.* at 83. Then again on June 4, 2018, Anovos pushed the delivery date back to Summer 2018. On August 21, 2018, Reggie from Anovos represented "I am pleased to report that this beautiful jacket is currently awaiting final approvals and remains on track to begin shipping to customers towards the end of Summer and Fall 2018." *Id.* at ¶ 83. Despite these assurances that the order remained on track, Mr. Catalano has yet to receive this purchase. *Id.* at ¶¶ 80-88.

Thus, Anovos' "estimates" of delivery constitute fraud because Anovos is not anticipating to deliver the items and has continuously failed to deliver thousands of items over the last four years.

### 3. Plaintiffs Justifiably Relied on Anovos' Misrepresentations.

The reliance element required for fraud and misrepresentation, "exists when the misrepresentation or nondisclosure was an immediate cause of plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not be, in all reasonable probability, have entered in the contract or other transaction." *Alliance Mortgage Co. v. Rothwell*, 10 Cal, 4th 1226, 1239; *Spinks v. Clark*, 147 Cal. 439, 444 (1905).

In showing reliance, one need not prove that the representation was the *only* cause or even the predominant cause, only that it was a substantial factor in his decision. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015). Further, in cases where a business advertises goods or services with the intent to not sell them as advertised, also known as "bait and switch" advertising, there is a significant danger that a consumer "will rely on the deceptive advertising to decide to buy merchandise." *Veera v. Banana Republic, LLC*, 6 Cal. App. 5th 907, 921 (2016) (finding genuine issues of material fact as to whether consumer's injury was *caused* by the unfair business practice or reliance on false advertising of clothing retailer).

Anovos first raises the issue with the language of TAC, specifically that "observing" the shipping dates is insufficient to show reliance on the shipping dates, and that Anovos' representations regarding anticipated delivery dates could not have "induced or caused" Plaintiffs to purchase the products. MTD 13:14-15. However, neither Plaintiffs nor any reasonable consumer would pay, hundreds of dollars, for items they would not receive.[5] Furthermore, Plaintiffs did not sign up to wait over 50 years (or even four years) for their prepaid products.

Here, Plaintiffs allege when making their initial purchasers they were aware of the estimated time of delivery dates and were eager for the date to approach. *Id*. ¶ at 129. In the light most favorable to Plaintiffs, it is reasonable to infer that Plaintiffs relied on common practices where in exchange for money, they would

---

[5] In fact, under the Merchandise Rule, where a seller solicits consumers to purchase their goods for sale via mail, internet, or telephone, that seller must have a reasonable basis to believe that any order will ship either: "within that time clearly and conspicuously stated in any such solicitation; or...if no time is clearly and conspicuously stated, within thirty (30) days after receipt of a properly completed order from the buyer." 16 C.F.R. § 435.2(a)(1). When a seller is unable to comply with the shipping requirements of the Merchandise Rule, they **must** offer the buyer an opportunity to either receive a refund or consent to further delay. 16 C.F.R. § 435.2(b)(1)

KAZOURONI LAW GROUP, APC
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

expect to receive an item within reasonable time, somewhere around the anticipated delivery date. Anovos cannot avoid liability by deliberately, indefinitely, and unilaterally postponing the delivery dates because they were "estimates." TAC at ¶¶ 84, 88, 97, 117, 124, 134. Most importantly, it is questionable if the products will ever be delivered, since some orders have not been fulfilled for over 3 years.

Furthermore, the TAC explicitly states Plaintiffs relied on Anovos' subsequent false assurances: trusting Anovos' representations, both Joseph and Catalano made second purchases (*id*. at ¶ 86, 112); Joseph also relied on the assurances to the point where he could no longer dispute the charges with his bank (*id*. at 129); Fernandes waited nearly a year before requesting a refund for the $277.60 (*see id*. at 92, 95, 101); Jones specifically made his purchase based on the delivery date corresponding with his payment plan—he continued to make payments with the assurance he would receive his order (*id*. at 129). Each Plaintiff was unable to use the funds that they provided to Anovos for a prolonged period of time, and yet they refrained from requesting refunds or cancelling transactions through their banks based on Anovos' continued reassurances that the items will be shipped.

Therefore, Plaintiffs sufficiently alleged reliance, and Defendants' motion to dismiss Plaintiffs' claims based on fraud should be denied.

### B. Plaintiffs Sufficiently Pled Facts to Establish Negligent Misrepresentation Against Defendants.

With respect to Anovos, Defendants[6] argue that Plaintiffs failed to plead reliance and misrepresentations to suffice Rule 9(b) standard. With respect to Lucasfilm, they argue that a licensor can never be responsible for licensee's actions. Although Plaintiffs strongly believe that Rule 8 standard must apply here, Plaintiffs' allegations against Defendants meet the Rule 9(b) standard. *Petersen v.*

---

[6] More detailed discussion regarding Lucasfilm's liability is below.

KAZEROUNI LAW GROUP, APC.
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

*Allstate Indem. Co.*, 281 F.R.D. 413, 417-18 (C.D. Cal. 2012)[7]("[A]nalyzing negligent misrepresentation under Rule 9(b) is contrary to both the express language and policy of the statue."); *Vess*, 317 F. 3d at 1105-06 ("To require that non-fraud allegations be stated with particularity merely because they appear in a complaint alongside fraud averments . . . would impose a burden on plaintiffs not contemplated by the notice pleading requirements of Rule 8(a).").

Plaintiffs could not possibly allege *every* misrepresentation in the TAC, nor do they have to do so. Instead, Plaintiffs detailed the major misrepresentations by Anovos, indicated the method and time of such misrepresentations (i.e. at the time of purchase through the website), and where applicable provided names of individuals making such representations. TAC at ¶¶ 40, 48, 43-50, 56, 78, 79, 80, 81, 83, 96, 107, 108, 128, 137, 139. Plaintiffs further alleged that they have purchased the products relying on Anovos' representations regarding anticipated dates of delivery. *Id.* Plaintiffs also detailed their reliance on Lucasfilm's endorsement of Anovos' products also promising prompt shipment of the products. *Id.* 149-151, 68. Thus, a dismissal of Plaintiffs negligent misrepresentation claim is not warranted.

## C.   Plaintiffs Adequately Allege Breach of Contract.

Anovos contends including "estimated" or "subject to change" disclaimers in their delivery dates would allow them to indefinitely postpone manufacturing and

---

[7] The majority of Defendants' cited cases do not necessarily weigh in favor of a Rule 9(b) application. Indeed, in *Sater v. Chrysler Grp. LLC*, No. EDCV 14-00-700-VAP (DTBx), 2015 U.S. Dist. LEXIS 21022 (C.D. Cal. Feb. 20, 2015) the court actually denied defendants motion to dismiss for negligent misrepresentation claims to the extent they were not governed by rule 9(b). *Id.* at *31. In *McNeil v. Wells Fargo Bank, N.A.*, No. 13-5519 SC, 2014 WL 6681604, *3 (N.D. Cal. Nov. 25, 2014), the plaintiffs did not bring negligent misrepresentation in their original complaint. When plaintiff amended the complaint, the court found that plaintiff merely "repackaging" the original fraud claims under the heading of negligent misrepresentation. *Id.*

KAZOURONI LAW GROUP, APC
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

shipment of the products, while failing to provide frustrated consumers with a refund. However, Anovos' take on a breach would lead to absurd and inequitable results, since Anovos would then never be in a breach of contract, even fifty years later.

A breach of contract is the "unjustified failure to perform a material promise or covenant." *Sun Microsystems, Inc. v. Microsoft Corp.*, 81 F. Supp. 2d 1026, 1030 (N.D. Cal. Jan. 25, 2000); see *Witkin, Summary of California Law* (Ninth Edition), Contracts § 792 at 715 (1998). A breach to a contract may be based on a time of performance. If a contract does not specify a time for performance, the obligations must be performed within a reasonable period of time. Cal. Civ. Code § 1657; *Henry v. Sharma*, 154 Cal. App. 3d 665, 669 (2nd Dist. Cal. 1984); *Jones & Laughlin Steel Co. v. Abner Doble Co.*, 162 Cal. 497, 504 (1912) (ruling a party's time of performance under a contract was based on an estimate, therefore the agreement implied the parties' were to perform within a reasonable time).

Furthermore, the covenant of good faith and fair dealing is implied in every contract to "protect[ ] the reasonable expectations of the contracting parties." *Digerati Holdings, LLC v. Young Money Entm't, LLC*, 194 Cal. App. 4th 873, 885 (2011); *see also, e.g., Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 684 (1988); *Badie v. Bank of America*, 67 Cal. App. 4th 779, 795 (1998) (finding a party's unreasonable exercise of discretion reserved under a contract in a manner inconsistent with the other party's legitimate expectations, is a "judicially recognized type[ ] of bad faith" that will breach the implied covenant).

Anovos provided Plaintiffs with the estimated times for shipment for each product prior to each purchase. TAC ¶¶ 70, 73, 91, 106, 119, 127. The delivery dates were consistently a three-month or month range for when the anticipated shipment was scheduled to occur. *Id.* at 43. To a consumer,[8] the "estimate" does not

---

[8] Anovos also appears to interpret that it was not reasonable to push the scheduled delivery dates as much as it has. *See* Exhibit A.

KAZEROUNI LAW GROUP, APC.
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

mean "indefinite." Indeed, Plaintiff Jones purchased the Captain Kirk Bomber Jacket with the reasonable expectation that at the latest, it would arrive once the jacket was fully paid through a payment plan. *Id*. at ¶ 129.

Defendant relies on a single unpublished case[9] - *A-Z Bus Sales, Inc. v. City of Burbank*, Case No. B244867, 2014 Cal. App. Unpub. LEXIS 1765, at *10 (Mar. 13, 2014). That case is inapplicable here for many reasons. First, the court in *A-Z* merely addressed whether the jury had sufficient evidence to rule in favor of a seller who sued for buyer's failure to pay in full *after* its delayed performance. *Id*. There, the jury believed that the seller manufactured and delivered the busses within a reasonable time despite the delays. *Id*. The evidence further showed that given the complicated manufacturing process of a bus where "thousands of pieces" have to be put together, and come from different vendors, the one year delay was reasonable. *Id*. This case concerns manufacturing of suit jackets and movie item replicas, the manufacturing of which is highly unlikely to be as complex as manufacturing of an entire bus. Second, here, the delay has been well over a year for many items: Mr. Catalano has waited over three years for a suit jacket and two years for a complete pistol prop replica; Mr. Fernandes, almost two years for a helmet accessory; Mr. Joseph, over three years for a suit a jacket; Mr. Alonso, almost two years for a helmet accessory; and Mr. Jones, over a year for a jacket. TAC at ¶¶ 70, 85, 90,105, 118, 125. Third, the items here have yet to be delivered.

Lastly, *A-Z* does not stand for Anovos' proposition that failure to deliver products by estimated delivery dates due to manufacturing delays is not a breach of contract. Instead, it confirms that the question of a breach depends on whether the

---

[9] This case is not citable in state courts, and thus, should be given minimal (if any) deference. *See Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1126 fn. 8 (9th Cir. 2005) (disregarding unpublished appellate opinion because "the court's task is to "predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance").

KAZOURONI LAW GROUP, APC
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

delay is so extensive that it is beyond a reasonable time contemplated by the parties. *See e.g. Hougland v. Roth Blum Packing Co.* 99 Cal.App. 631, 635, 279 P. 159 (1929) (A "reasonable time takes into consideration the . . . subject of the contract and the condition of the merchandise for the sale and delivery of which the contract is made."); *C. A. Hooper & Co. v. Freeman, Smith & Camp Co.,* 1 Cal.App.2d 122, 124, 36 P.2d 146 (1934) ("'The question of what is a reasonable time depends in each case upon its own particular circumstances. It is primarily a question of fact . . . .'")

Anovos' indefinite delay of Plaintiffs' items has far surpassed any reasonable expectation of time for Anovos to perform its contractual duties and constitutes breach. *See, e.g.*, *Gonsalves v. Roma Furniture Co.*, 107 Misc. 2d 186, 188, 433 N.Y.S. 2d 559, 561 (Civ. Ct. 1980) (finding breach where following the full payment and estimated delivery date, "[s]ix years and $2,023 later plaintiff has still not received her sofa chairs"); *see also Martinez v. Decorators Warehouse, Inc.* Cuyahoga App. No. 46873, 1983 Ohio App. LEXIS 12917 (Dec. 15, 1983), (holding six week delay in delivery of furniture constituted breach of contract under Ohio law.)

Further, Anovos' ongoing unilateral delays of the scheduled delivery dates constitutes material breach. Courts are particularly careful to protect a contracting party's legitimate expectations against an unreasonable exercise of unilaterally reserved discretion. *See Kashmiri v. Regents of University of California*, 156 Cal. App. 4th 809, 844-45 (2007) (holding a university's disclaimer that fees could be changed without notice at any time did not alleviate university's liability for unilaterally imposing charges after students have paid their bills). "[T]he language of a contract should be interpreted against the party who caused the uncertainty to exist." *Id.* (citation omitted). Anovos failed to disclaim that the buyers would be required to wait more than four years for their fully paid items to arrive, and that the anticipated delivery dates would be postponed every 4 months. Consumers

KAZEROUNI LAW GROUP, APC.
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

reasonably expected to receive their items somewhere within the anticipated dates of the delivery, but in no event did they expect to wait for more than four or five years after learning that they can no longer receive a refund. Therefore, Plaintiffs' sufficiently alleges Anovos' conduct was a breach of its contractual obligations.

### D. Mr. Catalano and Mr. Fernandes Sufficiently Allege CLRA Claims Against Anovos.

The purpose of the California Consumers Legal Remedies Act ("CLRA") is to protect consumers against numerous unfair and deceptive business practices and provide procedures for claims against such practices. Cal. Civ. Code §§ 1760, 1780 to 1782. Importantly, Rule 9(b) "is not strictly applicable" to the CLRA, because "the CLRA is not a fraud statute." *See Nordberg v. Trilegiant Corporation a/k/a TRL Group*, 445 F. Supp. 2d 1082, 1097 (N.D. Cal. 2006). "To require that plaintiffs prove more than the statute itself requires would undercut the intent of the legislature in creating a remedy separate and apart from common-law fraud." *Id*. "Thus, for a misrepresentation to be actionable under [§] 1770 it needs only 'result' in damage to consumer." *Id.; see e.g. Vess*, 317 F.3d 1097, 1105 (holding that "fraud is not an essential element of a claim under [§ 1770]"); *Committee on Children's Tel., Inc. v. General Foods Corp.*, 35 Cal.3d 197, 211-12 n.11 (1983) ("The requirement that fraud be pleaded with specificity . . . does not apply to causes of action under the consumer protection statutes.").

Contrary to Anovos' position, Plaintiffs Catalano and Fernandes provide detailed descriptions of Anovos' misrepresentations pervasive in Anovos' website. First, Catalano and Fernandes state the exact days they visited Anovos' website to make their purchases. TAC at ¶¶ 70, 85, 90.  Plaintiffs' allegations in TAC further provide a thorough account of how consumers navigate through anovos.com and the various occasions they will see misrepresentations of delivery dates: directly below the photograph of a chosen item, further below in the item's description, through various links on the item's page, in shipping calendars, and in specific

KAZOUROUNI LAW GROUP, APC
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

update pages on Anovos' website. TAC at ¶ 43. Then, Catalano and Fernandes each allege Anovos' false anticipated delivery dates for their items. *Id.* at ¶¶ 73, 74, 87, 91, 93. It is evident that Anovos fully understands these allegations, and instead, denies that the allegations were false (which is improper under 12(b)(6)). *See* Def.'s MTD p. 17 ("representations to shipping dates are not false because…") Despite Anovos' repeated promises to deliver the items years ago, to date, Anovos failed to deliver the complete items. TAC at ¶¶ 88, 97, 103.

Importantly, Catalano and Fernandes allege that the numerous misrepresentations of Anovos' reassurances and continuous indefinite delays in shipments—on which Plaintiffs detrimentally relied on—caused damages to Plaintiffs. Plaintiffs are still without products, and cannot cancel credit card charges with their respective banks. *See* TAC ¶¶ 75-83, 85, 95, 96.

The district courts within the Ninth Circuit have found less specific allegations satisfy even Rule 9(b) standard. *E.g., Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 902 (N.D. Cal. 2012) (finding Rule 9(b) was satisfied and "the "where" is ConAgra's package labels and website"); *Yucesoy v. Uber Techs., Inc.*, No. 15-cv-00262-EMC, 2016 U.S. Dist. LEXIS 15867, at *9 (N.D. Cal. Feb. 9, 2016) (rejecting Uber's argument that plaintiffs should be required to plead the specific web page that the allegedly misleading statements appears on after alleging Uber as the who, giving examples of misleading statements, time frames for such statements, and how they were misleading).

Thus, Plaintiffs' TAC provides sufficient factual allegations that Anovos violated the CLRA.

### E. Plaintiffs' Claims Against Lucasfilm Should Not Be Dismissed.

The UCL defines "unfair competition" to mean and include "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the FAL, Business and

KAZEROUNI LAW GROUP, APC.
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

Professions Code section 17500].” (Bus. & Prof. Code, § 17200.)[10] The UCL’s scope is broad and its purpose “is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.” (*Kasky, supra,* 27 Cal. 4th 949.) “It is not necessary to show the defendant intended to injure anyone since a violation of the [UCL] is a strict liability offense.” (*Podolsky v. First Healthcare Corp.* (1996) 50 Cal. App. 4th 632, 647; *State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal. App. 4th 1093, 1102.) Here, Lucasfilm’s profitable active promotion of Anovos’ products indicating the shipping dates followed by Anovos’ repeated and prolonged failure to deliver the products subjects Lucasfilm to liability under every prong of the UCL. At a minimum, Lucasfilm’s negligent representations regarding the dates of delivery while promoting Anovos’ products, and thus, satisfy unlawful prong. *Aryeh v. Canon Business Solutions, Inc.,* 55 Cal. 4th 1185, 1196 (2013) (UCL “borrows violations of other laws and treats them as unlawful practices’ that the unfair competition law makes independently actionable.”) Lucasfilm’s active promotion of Anovos’ products despite years of delay and repeated failure to deliver pre-paid products also satisfies the unfair prong. *See Donohue v. Apple, Inc.,* 871 F. Supp. 2d 913, 928 (N.D. Cal. 2012); *Bardin v. Daimlerchrysler Corp.,* 136 Cal. App. 4th 1255, 1260-1261 (2006). The utility of Lucasfilm’s substantially injurious conduct to consumers and failure to warn of knowing fraud does not justify the harm to thousands of consumers. Lastly, Lucasfilm made misleading advertisements also vouching for Anovos’ pre-paid products and promised shipment. *See Tobacco II Cases,* 46 Cal. 4th 298, 312 (“the UCL’s focus on the defendant's conduct, rather

---

[10] The UCL’s elements are substantively similar to those of the Florida’s Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.,* and are therefore addressed collectively herein. As Lucasfilm’s conduct is demonstrative of its UCL violations, this same conduct violated Fla. § 501.201, *et seq.*

KAZOURONI LAW GROUP, APC
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices.")

Although generally reasonable due diligence does not impose a liability on a licensor, this liability can exist where licensor "knew about the fraud, participated in gathering profits from the fraud, and actually profited from the fraud." *See e.g. Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1056 (9th Cir. 2008) (holding that specific intent to defraud could be inferred since a party knew about the fraud and actively profited from the fraud).[11]

In essence, the liability of a licensor to the public is analogous to a liability of the absent landlord—generally the licensee/tenant is responsible for any dangers created by them; however, the licensor bears that duty in the event that it has knowledge of the danger. *See e.g. Kinsman v. Unocal Corp.*, 37 Cal. 4th 659, 673-74 (2005) ("[W]hen the landowner knows or should know of a concealed hazard on its premises, then under ordinary premises liability principles, the landowner may be liable for a resultant injury."); *Resolution Trust Corp. v. Rossmoor Corp.,* 34 Cal.App.4th 93, 104 (1995) (holding that "landlord's duty [to enter the property and investigate expensive oil spills] arises only if the landlord knows or has reason to know the leakage has not been stopped or damage to adjoining property is imminent and avoidable.") (citation omitted); *Ucello v. Laudenslayer,* 44 Cal.App.3d 504 (1975) (holding although a landlord has no duty to protect tenant's invitees from dangerous condition on premises, even where it could do so by the exercise of reasonable diligence, where "a landlord has such a degree of control over the premises that it fairly may be concluded that he can obviate the presence of the dangerous [condition] and has knowledge thereof, an enlightened public policy

---

[11] Trademark licensor as any other entity is subject to the same liability under the law. For instance, a licensor cannot blatantly claim that it remains willfully blind to the quality of the products. *Kealoha v. E.I. du Pont de Numerours & Co.,* 82 F.3d 894, 903 (9th Cir. 1996) ("a trademark holder can be held vicariously liable when he 'puts out as his own product a chattel manufactured by another.'")

KAZEROUNI LAW GROUP, APC.
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

1  requires the imposition of a duty of ordinary care." *Id.* "To permit a landlord in

2  such situation to sit idly by in the face of the known danger to others must be

3  deemed to be socially and legally unacceptable."); *Fitch v. Le Beau*, 1 Cal. App. 3d

4  320, 324-25 (1969) ("Where the occupier of land is aware of a concealed condition

5  involving in the absence of precautions an unreasonable risk of harm to those

6  coming in contact with it and is aware that a person on the premises is about to

7  come in contact with it, the trier of fact can reasonably conclude that a failure to

8  war or repair the condition constitutes negligence.").

9      Plaintiffs' allegations, interpreted in favor of Plaintiffs, show that the

10  relationship between Lucasfilm and Anovos was intertwined, as Lucasfilm actively

11  promoted, encouraged, and enticed Anovos' sales after it was on actual and

12  constructive notice of Anovos' fraudulent scheme. TAC at ¶¶ 70, 102, 149-158,

13  167, 162, 168. Despite the voluminous complaints against Anovos and F rating on

14  BBB's website, Anovos' repeated failure to deliver thousands of items, consumers

15  complaints directly to Lucasfilm, Lucasfilm's acknowledgement of the Anovos

16  problems, Lucasfilm authorizes Anovos' use of Lucasfilm's trademark, profits from

17  Anovos' fraud, *and* advertises Anovos' prepaid items on its own website.[12]

18      Lucasfilm's reliance on *Mini Maid* and *Jamster Mktg.* is flawed. In *Mini*

19  *Maid,* the court declined to hold a franchise liable for trademark infringement due

20  to its failure to supervise its franchisee with "reasonable diligence." *Mini Maid*

21  *Services Co. v. Maid Brigade Systems, Inc.*, 967 F.2d 1516, 1521 (11th Cir. 1992).

22  However, the court in *Mini Maid* noted "a franchisor might be liable for

23  contributory trademark infringement, even if the franchisor did not itself perform

24  any infringing acts." *Id.* at 1521. In fact, the Supreme Court in *Inwood Labratories*

25

26  [12] Further, Lucasfilm should be held liable for creating Plaintiffs' peril or otherwise

27  rendering them more vulnerable to danger by vouching for a fraudulent company, which has yet to deliver thousands of prepaid items to consumers. *See e.g. Wood v.*

28  *Ostrander*, 879 F.2d 583, 590 (9th Cir. 1989) (finding trooper created a danger by impounding car and abandoning female passenger in a high crime area).

KAZOURONI LAW GROUP, APC
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

held that "if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason know is engaging in trademarking infringement, the manufacturer or distributor is contributorially[sic] responsible for any harm done as a result of the deceit." *Inwood Laboratories, Inc. v. Ives Lab., Inc.,* 456 U.S. 844, 853-54 (1982).[13]

Similarly, the court in *In re Jamster Mktg. Litig.,* 2009 U.S. Dist. LEXIS 43592 (S.D. Cal. May 22, 2009) held that wireless service providers (AT&T and T-Mobile) were not responsible for content provider's fraudulent advertisement due to their attenuated relationship. *Id.* There, AT&T & T-Mobile provided wireless phone service and messaging to consumers. *Id.* at *4. They maintained a business relationship with content providers who provided ring tones to their customers. *Id.* In exchange, wireless providers received a fee for its services. *Id.* The court in *Jamster Mktg.* held that since content providers (and not wireless providers) issued *all* false/misleading advertisements, *conclusory* allegations that wireless providers knew of consumer complaints regarding deceptive marketing, were insufficient to show that AT&T and T-Mobile controlled, participated, approved, marketed, or otherwise adopted content provider's advertising services. *Id.* *26. Here, Lucasfilm participated, marketed, and otherwise approved of Anovos' sales.

Thus, Lucasfilm is directly liable under UCL's unfair, unlawful and fraudulent prongs for its failure to warn of knowing fraud or at least discontinue endorsement and promotion of Anovos' products, as opposed to merely controlling and policing its trademark.

---

[13] Notably, California courts even recognized liability by trademark licensor in product liability cases, as long as the licensor "can be said to be a link in the marketing enterprise which placed a defective product within the stream of commerce." *Kasel v. Remington Arms Co.,* 24 Cal.App.3d 711, 725 (1972).

KAZEROUNI LAW GROUP, APC.
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

**F. Plaintiffs Sufficiently Pled Agency Because Lucasfilm's Actions Evidenced a Grant of Apparent Authority and Ratified Anovos' Conduct.**

Apparent authority emerges from a principal's manifestations to a third party. *See Inland Mediation Bd. v. City of Pomona*, 158 F. Supp. 2d 1120, 1140 (C.D. Cal. 2001). (citing Rest. (2d) of Agency, § cmt. c) (discussing apparent agency exists to the extent a third party reasonably believes the relationship to exist); *Hawaiian Paradise Park Corp. v. Friendly Broad. Co.*, 414 F.2d 750, 756 (9th Cir. 1969) ("The principal's manifestations giving rise to apparent authority may consist of direct statements to the third person, directions to the agent to tell something to the third person, or the granting of permission to the agent to perform acts . . . under circumstances which create in him a reputation of authority.") In *Mavrix*, the Ninth Circuit held that third-party users could reasonably believe the agent-moderators had apparent authority as the agent-moderators themselves "checked and approved" posts the third-party user attempted to upload on principal-defendant's platform. *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1055 (9th Cir. 2017). Similarly, one can be liable by ratifying another's conduct by either "knowing acceptance of the benefits," or by actions by an actor "who is not an agent but pretends to be." *Henderson v. United Student Aid Funds, Inc.,* 918 F.3d 1068, 1073-1074 (9th Cir. 2019).

Contrary to Defendants' contention, Plaintiffs allege facts demonstrating: (1) Lucafilm created a belief in the minds of Plaintiffs that Anovos was acting as Lucasfilm's agent, and (2) Plaintiffs reasonably relied on Lucasfilm's conduct. *Cf. Lushe v. Verengo Inc.,* 2015 U.S. Dist. LEXIS 16961,*10-17 (C.D. Cal. Feb. 2015) (in a well-reasoned opinion Judge Birotte held that reliance is not necessary to prove apparent authority). Lucasfilm further ratified Anovos' conduct by knowingly accepting profits gained from the sale of pre-paid items. *See e.g. Henderson*, 918 F.3d 1073. First, Anovos was authorized to prominently display

KAZOURONI LAW GROUP, APC
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

Lucasfilm's logos on its promotional materials (including website). Second, Lucasfilm promoted sales of Anovos products, encouraging customers to deal with Anovos, listing links on its own website, and redirecting customers to Anovos. Third, numerous consumers, including Mr. Fernandes, were under impression that Lucasfilm authorized Anovos to act on their behalf due to Lucasfilm's active marketing of Anovos' products. Fourth, Lucasfilm was aware of customer's confusion since many customers (including Mr. Fernandes) reached out to Lucasfilm <u>directly</u> regarding issues with Anovos, and yet, Lucasfilm did nothing to clarify consumers' confusion that Lucasfilm allegedly has no control over Anovos. Fifth, Ms. Santin's statement (albeit after plaintiffs already purchased the products) shows that Lucasfilm had the power to "escalate" any complaints for "immediate review and response." Sixth, Lucasfilm's continued dealing with Anovos and reaping benefits of Anovos' sales constitutes ratification of Anovos' conduct.

Thus, over the years of dealing with Anovos <u>after</u> being on constructive and then actual notice of Anovos' repeated failure to deliver products, Lucasfilm' continues its licensing of its trademarks and actively encourages and promotes Anovos products. All of these acts developed a "reputation of authority" to act on behalf of Lucasfilm and ratified Anovos' conduct. *See e.g. Mavrix Photographs,* 853 F.3d at 1030; *Henderson*, 918 F.3d 1073.

Thus, Plaintiffs provided sufficient allegations showing that Lucasfilm is subject to liability to the extent they could do so without the benefit of discovery.

**V. Conclusion.**

In sum, Plaintiffs respectfully request the Court to deny Defendants' Motion to Dismiss in its entirety. In the alternative, Plaintiffs request the Court grant Plaintiffs leave to file a fourth amended to cure any alleged pleading deficiencies, this court may rule upon. The policy of favoring amending is to be applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

KAZEROUNI LAW GROUP, APC.
2221 CAMINO DEL RIO SOUTH SUITE 101
SAN DIEGO, CA 92108

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**KAZOURONI LAW GROUP, APC**
**2221 CAMINO DEL RIO SOUTH SUITE 101**
**SAN DIEGO, CA 92108**

Date: December 30, 2019

Respectfully submitted,
**Kazerouni Law Group, APC**

By: _s/Abbas Kazerounian_
Abbas Kazerounian, Esq.
Yana A. Hart
_Attorneys for Plaintiffs_